UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| BRUCE RHYNE and JANICE RHYNE, | : |
| Plaintiffs, | : No. 3:18-cv-00197-RJC |
| v. | : |
| UNITED STATES STEEL CORPORATION, et al., | : |
| Defendants. | : |

**DEFENDANT ACUITY SPECIALTY PRODUCTS, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Acuity Specialty Products, Inc. ("Acuity"), by and through its undersigned counsel, hereby files this Brief in Support of its Motion for Summary Judgment and respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety as against Acuity because Plaintiffs have failed to put forth evidence (i) of any benzene exposure from Acuity's Zep Parts Washing Solvent, let alone evidence that exposure from it caused Mr. Rhyne's Acute Myeloid Leukemia ("AML") or (ii) that Acuity's Zep Parts Washing Solvent was defective.

**I.   Statement of Undisputed Material Facts**

Bruce and Janice Rhyne filed their Complaint in the United States District Court for the Western District of North Carolina alleging that Mr. Rhyne contracted AML due to exposure to benzene-containing products manufactured, produced, and/or sold by defendants.[1] Compl. at ¶¶

---

[1] Plaintiffs originally filed this lawsuit in Pennsylvania in the Philadelphia County Court of Common Pleas. *Rhyne v. United States Steel Corporation, et al.*, No. 160100228 (complaint filed Jan. 5, 2016). The Court of Common Pleas dismissed Plaintiffs' complaint on grounds of *forum non conveniens*. Compl. at ¶ 2. Plaintiff appealed to the Pennsylvania Superior Court. *Id.* During their pending appeal in Pennsylvania, Plaintiffs filed this action. Since then, the Pennsylvania Superior Court has affirmed the Court of Common Pleas' dismissal of Plaintiffs' complaint and the Pennsylvania Supreme Court has

19-39. In their Complaint, Plaintiffs allege that Mr. Rhyne was exposed to Acuity's Zep Parts Washer Solvent. Compl. at ¶ 34.

From 1976 to 2015, Mr. Rhyne worked at various North and South Carolina plants owned by his employer, Duke Energy Corporation. Compl. at ¶ 19(d). Mr. Rhyne testified that he believed that around 2005 or 2008, the team that he supervised began using a Zep Parts Washing Solvent in the parts washer machine located "in the RCA [radium control area], at the power plants, and in the hot machine shop."[2] Bruce Rhyne Deposition Volume III ("Rhyne Dep. Vol. III"), attached hereto as **Exhibit A** at 360:12-22, 361:11-18; Bruce Rhyne Deposition Volume IV ("Rhyne Dep. Vol. IV"), attached hereto as **Exhibit B** at 90:10-18. Mr. Rhyne was unable to identify the name of the specific Zep product. **Exhibit A**, Rhyne Dep. Vol. III at 388:19-24, 389:1.

He further testified that he never saw anyone put the parts washer solvent into the machine, that he never saw a container for the parts washer solvent that was used in the parts washer machine, and that he never saw a Zep Parts Washing Solvent container. *Id.* at 372:5-10, 23-24, 373:1-14; 388:13-18. Mr. Rhyne testified that as a supervisor he "did some cleaning [with the parts washer,] … but more observation than anything." **Exhibit B**, Rhyne Dep. Vol. IV at 90:19-24; 91:1-8. Mr. Rhyne testified that the few instances that he did use the parts washer as a supervisor, he always used gloves. **Exhibit A**, Rhyne Dep. Vol. III at 384:16-24, 385:1-8 ("So I did – I did, but not without gloves. I had gloves on … But more than anything, it was more of an observation.").

---

denied Plaintiffs' Petition for Allowance of Appeal. *Rhyne v. United States Steel Corporation, et al.*, No. 126 EAL 2019 (Pa. Sept. 9, 2019).

[2] Mr. Rhyne recalled only that he had seen "Zep" on paperwork from the warehouse and had some recollection of discussing "Zep" with one of his field planners, but did not recall the conversations. **Exhibit A**, Rhyne Dep. Vol. III at 379:14-22, 382:12-24, 383:1-3.

Plaintiffs' experts have all produced reports and been deposed in this case. Plaintiffs produced an expert report by Mr. Stephen E. Petty, a professional engineer and certified industrial hygienist. Stephen E. Petty Expert Report ("Petty Report"), attached hereto as **Exhibit C**. Mr. Petty calculated Mr. Rhyne's exposure to each defendant's product. *Id.* In Table 4-12, entitled "Summary of Mr. Rhyne's Exposure Events and Times by Product," Mr. Petty stated that Mr. Rhyne had **zero** exposure events and **zero** hours of exposure to Acuity's Zep Parts Washer Solvent. *Id.* at p. 78. As a result, Mr. Petty did not provide any opinion that Zep Parts Washer Solvent contained benzene or that it specifically caused Mr. Rhyne's injuries. *Id.* Similarly, Mr. Petty did not provide any opinion that Acuity's Zep Parts Washing Solvent was defective. *See generally,* **Exhibit C***,* Petty Report.

On July 12, 2019, Plaintiffs notified the Court that Mr. Petty was retiring and that they had retained Mr. Robert Herrick to testify as their expert industrial hygienist in this case. *See* Plaintiffs' Motion to Extend Certain Pretrial Order and Case Management Plan Deadlines by Forty-Five Days (Doc. 104) at ¶ 9. On September 18, 2019, Plaintiffs produced an expert report of Mr. Herrick ("Herrick Report"). A copy of the Herrick Report is attached hereto as **Exhibit D**. In Tables 3 and 4, Mr. Herrick identified the "Daily Average Benzene Exposure by Product and Facility" and "Cumulative Benzene Exposure by Product and Facility." *Id.* at pp. 39, 43. Like Mr. Petty, Mr. Herrick did not identify **any** exposure to Mr. Rhyne from Acuity's Zep Parts Washer Solvent. *Id.* As a result, Mr. Herrick did not provide any opinion that Acuity's Zep Parts Washer Solvent caused Mr. Rhyne's injuries. *Id.; see also* Deposition of Mr. Herrick, attached hereto as **Exhibit E** at 15:1-3 (**Q: Does the report contain all of your opinions in this matter?** A: Yes, it does."). Similarly, Mr. Herrick did not provide any opinion that Acuity's Zep Parts Washing Solvent was defective. *See generally*, **Exhibit D**, Herrick Report.

Plaintiffs produced the expert report of Peter Infante, an epidemiologist. Peter Infante Expert Report ("Infante Report"), attached hereto as **Exhibit F**. Mr. Infante was asked to provide an opinion "as to whether or not occupational exposure to benzene is a recognized cause of acute myelogenous leukemia (AML)." *Id.* at p. 1. Mr. Infante identified several products to which Mr. Rhyne was exposed and incorporated Mr. Petty's exposure calculations into his report. *Id.* at pp. 11, 78. During his deposition, Mr. Infante indicated that he was now relying on Mr. Herrick's determination of benzene levels in the various products at issue. Deposition of Mr. Infante, attached hereto as **Exhibit G** at 50:4-7; 119:6-18.[3] As a result, Mr. Infante did not specifically identify Zep Parts Washer Solvent as a product to which Mr. Rhyne was exposed and did not provide any opinion that Mr. Rhyne's AML was caused by exposure to Zep Parts Washer Solvent. *Id.* Similarly, Mr. Infante did not provide any opinion that Acuity's Zep Parts Washing Solvent was defective. *See generally* Infante Report.

Plaintiffs also produced an expert report by Dr. Steven Gore, a hematologist and oncologist. Dr. Steven Gore Expert Report ("Gore Report"), attached hereto as **Exhibit I**. In his report, Dr. Gore opines that Mr. Rhyne's AML was caused by exposure to benzene-containing products. *Id.* Dr. Gore specifically stated that he "[does] not make any effort to *quantify* the level or dose of exposure that the patient may have had to individual chemicals." *Id.* at p. 10. Dr. Gore stated that Mr. Rhyne was exposed to several benzene-containing products throughout his career and incorporates Mr. Petty's exposure calculations into his report. *Id.* at p. 13. During his deposition, Dr. Gore testified that "I haven't been asked to update my report based on Herrick's report. But ***I would rely on Herrick's estimations at this point***." Deposition of Dr.

---

[3] On August 29, 2019, Plaintiffs produced a supplemental expert report of Mr. Infante. Infante Supplemental Report, attached hereto as **Exhibit H**. The single-page supplemental report stating that he has reviewed Mr. Herrick's "estimated benzene exposure and his atmospheric cumulative benzene exposure" and that his opinions in the case remain unchanged. *Id.*

Gore, attached hereto as **Exhibit J** at 86:25; 87:1-4 (emphasis added). As a result, Dr. Gore did not identify Zep Parts Washer Solvent as a product to which Mr. Rhyne was exposed and did not provide any opinion that Mr. Rhyne's AML was caused by exposure to Zep Parts Washer Solvent. *Id.* Similarly, Dr. Gore did not provide any opinion that Acuity's Zep Parts Washing Solvent was defective. *See generally,* **Exhibit I**, Gore Report.

Additionally, Plaintiffs produced an expert report of Dr. Robert Harrison, an occupational medicine specialist. Dr. Robert Harrison Expert Report ("Harrison Report"), attached hereto to as **Exhibit K**. Dr. Harrison stated that Mr. Rhyne was exposed to several benzene-containing products throughout his career and incorporates Mr. Petty's exposure calculations into his report. *Id.* at pp. 5-6, 11-13. Dr. Harrison identified several benzene-containing products to which Mr. Rhyne was allegedly exposed. *Id.* at p. 11. Dr. Harrison did not identify Zep Parts Washer Solvent as a benzene-containing product to which Mr. Rhyne was exposed. *Id.* During his deposition, Dr. Harrison testified that he was relying upon Mr. Herrick and Mr. Petty's quantitative analysis of benzene content in the products at issue. Deposition of Dr. Harrison, attached hereto as **Exhibit L** at 163:25; 164:1-9; *see also* October 17, 2019 Letter, attached hereto as **Exhibit M** (stating that he reviewed Mr. Herrick's report and that his opinions remain unchanged). As a result, Dr. Harrison did not provide an opinion that Mr. Rhyne's AML was caused by an exposure to Acuity's Zep Parts Washer Solvent. Similarly, Dr. Harrison did not provide any opinion that Acuity's Zep Parts Washing Solvent was defective. *See generally,* **Exhibit K**, Harrison Report.

## II. Standard of Review

Federal Rules of Civil Procedure 56(c) provides that summary judgment is appropriate:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

> there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law

Fed. R. Civ. Pro 56(c).

The plain language of Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and the moving party is entitled to judgment as a matter of law." *Id.* Once a moving party demonstrates that there is an absence of evidence to support the nonmoving party's case, the nonmoving party "may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995).

### III. Argument

Plaintiffs have brought the following claims against all defendants: (i) negligence and gross negligence; (ii) breach of warranty; (iii) strict liability; (iv) fraudulent concealment; and (v) loss of consortium.[4] *See generally* Compl. As explained below, all of Plaintiffs' claims against Acuity fail as a matter of law because Plaintiffs have not provided evidence: (i) of any benzene exposure from Acuity's Zep Parts Washing Solvent, let alone evidence that exposure from it caused Mr. Rhyne's AML or (ii) that Acuity's Zep Parts Washing Solvent was defective.

### A. Plaintiffs failed to produce any evidence that Acuity's Zep Part Washer Solvent contained benzene that caused Mr. Rhyne's AML.

---

[4] It should be noted that North Carolina does not recognize a theory of strict liability in products liability cases. N.C. Gen. Stat. § 99B–1.1 (2019)("There shall be no strict liability in tort in product liability actions"); *Burrell v. Bayer Corp*, 260 F. Supp. 3d 485, 494 (W.D.N.C. 2017).

{B4219282.2}   6

Plaintiffs bring product liability claims in negligence and strict liability in Counts I and III of their Complaint, a claim for breach of warranty in Count II of their Complaint, and a claim for battery and fraud in Count IV of their Complaint. All of these claims require proof that a product for which Acuity is liable caused Mr. Rhyne's AML. *See, e.g., Rohrbough v. Wyeth Lab., Inc.*, 916 F.2d 970, 972 (4th Cir. 1990) ("An essential element of plaintiffs' cause of action is proof that defendant's [product] caused plaintiffs' injuries and proof of causation must be established by expert testimony."); *Celotex Corp.,* 477 U.S. at 319-20 (holding that a manufacturer is entitled to summary judgment when no evidence is presented to show that the manufacturer's product was the proximate cause of the plaintiff's injuries).

Under North Carolina law, causation is twofold, consisting of both general and specific causation. Thus, to succeed on their claims, Plaintiffs must prove both general and specific causation. *See Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 465, 478 (M.D. N.C. 2006) (granting defendants' motion for summary judgment because plaintiff failed to establish general and specific causation). Whereas general causation simply requires a plaintiff to prove that a certain type of product **can** cause a certain type of disease, to prove specific causation, Plaintiffs must demonstrate that Acuity's Zep Parts Washer Solvent **actually** caused Mr. Rhyne's AML. *Id.* at 471 ("Specific, or individual causation, however, is established by demonstrating that a given exposure is the cause of the particular individual's disease.").

Here, Plaintiffs' original industrial hygienist expert, Mr. Petty, stated that Mr. Rhyne had **zero** exposure events and **zero** hours of exposure to Acuity's Zep Parts Washer Solvent. **Exhibit C**, Petty Report at 78. Similarly, Mr. Herrick, Plaintiffs' industrial hygienist who replaced Mr. Petty, did not opine that Mr. Rhyne had any exposure events or exposure hours from Acuity's Zep Parts Washer Solvent. **Exhibit D**, Herrick Report pp. 39, 43.

Plaintiffs' specific causation experts, Dr. Gore, Dr. Harrison, and Dr. Infante, in turn rely upon Mr. Petty's and Mr. Herrick's exposure calculations as the basis for their opinions that Mr. Rhyne's AML was caused by his alleged exposures to defendants' products. **Exhibit I**, Gore Report at pp. 3, 14, 17, 20-21; **Exhibit K**, Harrison Report at pp. 5-6, 11-13; **Exhibit F**, Infante Report at pp. 17, 78; **Exhibit H**, Infante Supplemental Report. Because Mr. Petty and Mr. Herrick did not opine that Mr. Rhyne suffered **any** exposure hours or exposure events to Acuity's Zep Parts Washer Solvent, Plaintiffs' remaining experts therefore do not opine that Mr. Rhyne's AML was caused by Acuity's Zep Parts Washer Solvent. *See generally* **Exhibit I**, Gore Report; **Exhibit K**, Harrison Report; **Exhibit F**, Infante Report; **Exhibit H**, Infante Supplemental Report. Accordingly, although all three doctors identified several products that allegedly caused Mr. Rhyne's AML, none identified Zep Parts Washer Solvent let alone offered a causation opinion about it. **Exhibit I**, Gore Report at p. 13; **Exhibit K**, Harrison Report at p. 13; **Exhibit F**, Infante Report at pp. 78-79. Therefore, because Plaintiffs' experts did not provide any opinion linking Mr. Rhyne's AML to an exposure to Zep Parts Washer Solvent, Plaintiffs have failed to establish specific causation and their claims fail as a matter of law.

### B. Plaintiffs did not produce any evidence that Acuity's Zep Parts Washer Solvent was defective.

"It is well settled that to establish a claim of product defect, a plaintiff must come forward with evidence of the defect. If a plaintiff fails to come forward with evidence of a defect, judgment must be granted in defendant's favor." *First Care Med. Clinic, Inc. v. Polymedco, Inc.*, 3:05-cv-82, 2006 WL 3497845, at *2 (N.D. N.C. Dec. 4, 2006); *see also Cohen v. Duracell Inter. U.S.A.*, 2 Fed Appx. 373, 376 (4th Cir. 2001) ("Without evidence of a defect in the design or manufacture of the battery, [plaintiff] simply cannot recover in either negligence or strict liability."). Each of Plaintiffs' claims is based on the assertion that defendants' products

was defective because they contained benzene and the defendants did not adequately warn Plaintiff of such. *See generally* Compl. As described above, Plaintiffs have produced no evidence that Acuity's Zep Parts Washer Solvent contained benzene or was otherwise defective. Accordingly, Plaintiffs' claims against Acuity fail as a matter of law.

### C. Plaintiffs' loss of consortium claim must fail because the attendant claims fail as a matter of law.

A loss of consortium claim is considered to be a derivative claim for which one's right to recover is totally dependent on the injured spouse's right to recover. *Nicholson v. Hugh Chatham Memorial Hosp.*, 300 N.C. 295, 304, 266 S.E.2d 818, 823 (1980) ("[A] spouse may maintain a cause of action for loss of consortium due to the negligent actions of third parties so long as that action for loss of consortium is joined with any suit the other spouse may have instituted to recover for his or her personal injuries."); *Jones v. Southcorr*, L.L.C., 324 F. Supp. 2d 765, 783 (M.D. N.C. 2004) ("Because the Court has dismissed Plaintiff Tucson Jones' claims, Plaintiff Yvonne Jones' derivative claim for loss of consortium fails as a matter of law."). Accordingly, if the injured spouse cannot recover for his injuries then the uninjured spouse cannot recover under a loss of consortium theory. Here, as explained above, Mr. Rhyne cannot recover against Acuity for his injuries because Plaintiffs have failed to show that Acuity's product caused Mr. Rhyne's AML. Therefore, because Mr. Rhyne cannot recover from Acuity for his injuries, Mrs. Rhyne's claim for loss of consortium must fail as a matter of law. *Jones*, 324 F. Supp. 2d at 783 (granting summary judgment on loss of consortium claim because it dismissed the spouse's underlying claim).

### IV. Conclusion

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety as against Acuity Specialty Products Group, Inc.

Dated: November 26, 2019

Respectfully submitted,

*/s/ William M. Starr*
William M. Starr, Esquire
N.C. Bar No.: 31813
Nelson Mullins Riley & Scarborough LLP
One Wells Fargo Center
301 South College Street, 23rd Floor
Charlotte, NC 28202
bill.starr@nelsonmullins.com

Kathy K. Condo, Esquire
(admitted *pro hac vice*)
Joshua S. Snyder, Esquire
(admitted *pro hac vice*)
Babst Calland Clements and Zomnir, P.C.
Two Gateway Center, 7th Floor
Pittsburgh, PA 15222
kcondo@babstcalland.com
jsnyder@babstcalland.com

*Attorneys for Defendant Acuity Specialty Products, Inc.*

# CERTIFICATE OF SERVICE

I, William Starr, hereby certify that a true and correct copy of the foregoing was served this 26th day of November, 2019, to all registered parties' counsel by operation of the Court's electronic filing system.

- **Brian Andrew Bender**
  bbender@harrisbeach.com
- **Peri Berger**
  pberger@harrisbeach.com,ManagingClerksNYC@HarrisBeach.com,HBSafetyKleen@HarrisBeach.com
- **Matthew Cairone**
  mcc@caironelawfirm.com
- **Diana Coada**
  diana.coada@rtt-law.com,Sheryl.Jones@rtt-law.com,erin.sweatman@rtt-law.com,robyn.thompson@rtt-law.com
- **Kathy K. Condo**
  kcondo@babstcalland.com
- **Judi Abbott Curry**
  jcurry@harrisbeach.com
- **Mark Philip Doby**
  mdoby@wallacegraham.com
- **Andrew J. DuPont**
  adupont@lockslaw.com,etelles@lockslaw.com,clippmann@lockslaw.com
- **Jennifer Lynne Emmons**
  jemmons@lockslaw.com
- **Andrew P. Fishkin**
  afishkin@fishkinlucks.com,lhoefel@fishkinlucks.com,akim@fishkinlucks.com,awyckoff@fishkinlucks.com
- **William M. Graham**
  bgraham@wallacegraham.com,cpine@wallacegraham.com,athompson@wallacegraham.com,mdoby@wallacegraham.com
- **Timothy Gray**
  Tim.Gray@formanwatkins.com
- **John T. Holden**
  jholden@dmclaw.com,mpritt@dmclaw.com,mhopey@dmclaw.com
- **Janice Holmes**
  jholmes@gwblawfirm.com,sbook@gwblawfirm.com
- **John S. Hughes**
  jhughes@wallacegraham.com,lwike@wallacegraham.com,mwallace@wallacegraham.com
- **Howard E. Jarvis**
  jarvish@wmbac.com,gsutton@wmbac.com,acarr@wmbac.com

- **John T. Jeffries**
  jjeffries@mgclaw.com,patricia.powell@mgclaw.com,elifer@mgclaw.com
- **Christopher M. Kelly**
  ckelly@gwblawfirm.com,clee@gwblawfirm.com
- **Douglas Everette Kingsbery**
  dek@tharringtonsmith.com,bsvendsgaard@tharringtonsmith.com
- **Jeffrey Brandt Kuykendal**
  jeffrey.kuykendal@mgclaw.com,patricia.powell@mgclaw.com,laura.martin@mgclaw.com
- **Christopher C. Lam**
  clam@bradley.com,jschulz@bradley.com,chester@bradley.com,dholdren@bradley.com
- **Brian M. Ledger**
  bledger@grsm.com
- **Steven M. Lucks**
  slucks@fishkinlucks.com,kroman@fishkinlucks.com,awyckoff@fishkinlucks.com
- **Chad D. Mountain**
  cmountain@maronmarvel.com,nhares@maronmarvel.com
- **John Whitelaw Ong**
  jong@cshlaw.com,kcooper@cshlaw.com
- **Timothy Peck**
  tpeck@foxrothschild.com,hhgrant@foxrothschild.com
- **Eric G. Sauls**
  eric.sauls@lewisbrisbois.com
- **Vaughn Karl Schultz**
  vschultz@dmclaw.com
- **Jonathan Edward Schulz**
  jschulz@bradley.com,mduscha@bradley.com,chester@bradley.com
- **Thomas McRoy Shelley , III**
  roy.shelley@rtt-law.com
- **Joshua S. Snyder**
  jsnyder@babstcalland.com
- **William M. Starr**
  bill.starr@nelsonmullins.com,kathy.southworth@nelsonmullins.com,jill.tucker@nelsonmullins.com
- **Christopher Stofko**
  cstofko@dmclaw.com
- **Daniel Robert Strecker**
  dstrecker@HarrisBeach.com
- **Michael Joseph Sweeney**
  msweeney@dmclaw.com
- **Daniel Bowman White**
  dwhite@gwblawfirm.com
- **Nicholas Damian Wilson**
  nwilson@gordonrees.com
- **Virginia Marie Wooten**
  vwooten@cshlaw.com,nhowie@cshlaw.com

- (No manual recipients)

/s/ William M. Starr
William M. Starr, Esquire
N.C. Bar No.: 31813
Nelson Mullins Riley & Scarborough LLP
One Wells Fargo Center
301 South College Street, 23rd Floor
Charlotte, NC 28202
bill.starr@nelsonmullins.com

Kathy K. Condo, Esquire
(admitted *pro hac vice*)
Joshua S. Snyder, Esquire
(admitted *pro hac vice*)
Babst Calland Clements and Zomnir, P.C.
Two Gateway Center, 7th Floor
Pittsburgh, PA 15222
kcondo@babstcalland.com
jsnyder@babstcalland.com

*Attorneys for Defendant Acuity Specialty Products Group Inc.*