IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| BRUCE RHYNE and JANICE RHYNE, | Case No.: 3:18-cv-00197-RJC-DSC |
| Plaintiffs, | |
| v. | |
| UNITED STATES STEEL CORPORATION, et al., | |
| Defendants. | |

**DEFENDANT CHEVRON U.S.A. INC.'S MEMORANDUM OF LAW
IN SUPPORT OF SUMMARY JUDGMENT**

Defendant Chevron U.S.A. Inc. ("Chevron") is entitled to summary judgment because there is no evidence that Mr. Rhyne ever worked with a product for which Plaintiffs claim Chevron bears responsibility, much less that any such product was a substantial contributing cause of his alleged injury.

**FACTS**

**A.  Background**

Plaintiffs Bruce Rhyne and his wife, Janice Rhyne, brought this action in April 2018, seeking damages claiming that Mr. Rhyne contracted Acute Myelogenous Leukemia ("AML") from working with defendants' alleged benzene-containing products. Complaint ¶¶ 1, 19–22, ECF No. 1. In their Complaint, Plaintiffs do not identify a Chevron product(s) with which they claim Mr. Rhyne worked. Rather, Plaintiffs allege that Chevron bears responsibility for

unidentified Chevron and Gulf Oil Company ("Gulf") "solvents"[1] used in unidentified "co-defendants'" "benzene-containing products" which Plaintiffs also did not identify. *Id*. ¶ 28. However, in response to Chevron's interrogatories, Plaintiffs claim that Chevron bears responsibility for: (i) Gulf gasoline; (ii) Chevron and Gulf solvents contained in Berryman B-12 Chemtool, which is a product manufactured by Berryman Products, Inc.;[2] and (iii) Textile Spirits contained in unidentified 3M products. Exh. A (Plaintiffs' Responses to the Interrogatories of (former Defendant) Ashland, Inc.) at 7.

**B. There is No Evidence Mr. Rhyne Ever Worked Either with Gulf Gasoline or with the Products Plaintiffs Allege Contained Chevron and Gulf Solvents, Much Less that they Were a Substantial Contributing Cause of Mr. Rhyne's AML**

The parties having engaged in extensive discovery,[3] which is now closed, there is no evidence that Mr. Rhyne ever worked with Gulf gasoline. Likewise, there is no evidence Mr. Rhyne worked with Berryman B-12 Chemtool or 3M products,[4] much less B-12 Chemtool

---

[1] In 1985, Gulf Oil Corporation merged with Standard Oil of California, with both companies re-branding as Chevron in the United States. For purposes of this motion only, Chevron does not challenge that it bears responsibility for Gulf products.

[2] Berryman B-12 Chemtool is a carburetor, fuel system and injector cleaner. https://www.berrymanproducts.com/products/gasoline/b-12-chemtool-carburetor-fuel-system-and-injector-cleaner/Berryman Products, Inc.

[3] Plaintiffs originally brought their claims in the Court of Common Pleas of Philadelphia County ("Philadelphia Action"), but refiled them in this Court after the Philadelphia Action was dismissed based on *forum non conveniens*. Complaint ¶ 2. The dismissal has since been affirmed on appeal. *Rhyne v. U.S. Steel Co*., No. 432 EAL 2018, 13–14 (Pa. Super. Ct. Feb. 22, 2019), *appeal denied*, No. 126 EAL 2019 (Pa. Sept. 9, 2019). All discovery conducted in the Philadelphia Action applies here. Pretrial Order and Case Management Plan at 2 n.2, ECF No. 94 ("to avoid undue delay, all discovery already conducted in the proceedings of this case in the Court of Common Pleas Philadelphia County, before the case was filed in the Western District of North Carolina, shall apply in this Court to these proceedings.").

[4] Plaintiffs did not sue Berryman or 3M.

or 3M products that contained Chevron or Gulf solvents, including Textile Spirits (references to "solvents" shall hereinafter include Textile Spirits).[5]

At his deposition, which spanned 5 days, Mr. Rhyne was asked to identify, *inter alia*, every product with which he worked and the details surrounding his work with them. While Mr. Rhyne identified dozens of products, he never testified that he worked with Gulf gasoline, B-12 Chemtool, or a 3M product.[6]

When this action was pending in Philadelphia, Plaintiffs served an expert report from an industrial hygienist, Stephen Petty. Exh. C (expert report; Stephen Petty). Mr. Petty opined that Mr. Rhyne was exposed to benzene from a variety of products manufactured or supplied by many of the named defendants, at levels which he calculated and identified in his report. *Id.* at 249–50; § 13.9, Table 13-22. Given the absence of testimony by Mr. Rhyne or any other record evidence that Mr. Rhyne ever worked with Gulf gasoline, B-12 Chemtool, or 3M products,

---

[5] A solvent is any substance that dissolves a solute, resulting in a solution. The solvents at issue here, including Textile Sprits, which are derived from crude oil, may have contained trace amounts of naturally occurring benzene. However, these solvents have their own unique toxicological profiles, which are not influenced by the presence of trace levels of benzene, and the available scientific and medical literature does not support that even high occupational exposures to them are established etiological risk factors in the development of AML (or any other human cancer). Thus, no agency or scientific body including the Occupational Safety and Health Administration (OSHA), American Conference of Governmental Industrial Hygienists (ACGIH), International Agency for Research on Cancer (IARC), World Health Organization (WHO), US Environmental Protection Agency (EPA), Agency for Toxic Substances and Disease Registry (ATSDR) or National Toxicology Program has regulated or described these solvents as carcinogenic products. *See* exh. B (expert report; David Pyatt, Ph.D.) at 12–15.

[6] Given its sheer volume and that Chevron anticipates Plaintiffs will acknowledge that Mr. Rhyne never testified that he worked with Gulf gasoline, B-12 Chemtool or a 3M product, Chevron has not burdened the Court by attaching Mr. Rhyne's complete deposition testimony as an exhibit to its motion. However, should the Court wish to review that testimony or should Plaintiffs dispute that Mr. Rhyne never testified that he worked with Gulf gasoline, B-12 Chemtool or 3M products, Chevron would be pleased to include Mr. Rhyne's complete deposition testimony as an exhibit to its reply memorandum of law in further support of its motion.

Mr. Petty did not attribute any of Mr. Rhyne's benzene exposure to Gulf gasoline, B-12 Chemtool, or a 3M product. *Id.*

Plaintiffs named three "medical causation" experts in this matter: Robert Harrison, M.D., an occupational medicine physician; Peter Infante, an epidemiologist; and Steven Gore, M.D., a hematologist/oncologist. Exh. D (Plaintiffs' Rule 26(a)(2) Disclosures).[7] While each of them purports to associate Mr. Rhyne's AML with exposure to one or more defendants' alleged benzene-containing products, given the absence of evidence that Mr. Rhyne ever worked with Gulf gasoline, B-12 Chemtool, or a 3M product, none of them offers an opinion in his expert report that any of those products was a substantial contributing cause of Mr. Rhyne's AML. *See* Exhs. E at 6, 11–12 (¶ 5), 13 (no opinion by Dr. Harrison that Mr. Rhyne was ever exposed to benzene from Gulf gasoline, B-12 Chemtool or a 3M product); I at 13–14 (¶ 20), 17 (¶ 25) (no opinion from Dr. Gore that Mr. Rhyne had benzene exposure from Gulf gasoline, B-12 Chemtool or a 3M product); G at 10–11 (no opinion by Mr. Infante that Mr. Rhyne was ever exposed to benzene from Gulf gasoline, B-12 Chemtool or a 3M product).

Plaintiffs did not include Mr. Petty in their Rule 26(a) disclosures in this matter. Exh. D. Instead, Plaintiffs now rely on another industrial hygienist, Robert Herrick, M.S., from whom they have also served an expert report. Exh. J (expert report; Robert Herrick, M.S.). While Dr. Herrick calculated Mr. Rhyne's exposures to benzene from many different products, like Mr. Petty, Dr. Herrick does not offer an opinion in his report that Mr. Rhyne was ever exposed to benzene from Gulf gasoline, B-12 Chemtool, or a 3M product. *Id.* at 39 (Table 3), 43 (Table 4).

---

[7] These experts' reports are exhs. E (expert report; Robert Harrison, M.D.); F (supplemental expert report; Robert Harrison, M.D.); G (expert report; Peter Infante); H (supplemental expert report; Peter Infante); I (expert report; Steven Gore, M.D.).

4

Dr. Herrick and Plaintiffs' causation experts were all deposed in this matter. Dr. Herrick testified he did not recall any evidence that Mr. Rhyne had ever worked with or around a Berryman product or a 3M product. Exh. K at 47:16–48:4.

Dr. Gore testified he was unaware of Mr. Rhyne ever having been exposed to any products beyond those identified in paragraph 25 of his report and any other products identified by Mr. Rhyne in his deposition. Exh. L at 88:1–89:4. Dr. Gore did not, in paragraph 25 of his report, identify Gulf gasoline, Berryman B-12, or a 3M product, exh. I at 17–18, and, as discussed, Mr. Rhyne did not testify at his deposition that he ever worked with any of those products.

Dr. Harrison testified that he was not offering an opinion that a Gulf, Berryman, or 3M product was a significant contributing factor in causing Mr. Rhyne's AML, and that he had no information that any product with which Mr. Rhyne worked contained a Gulf or Chevron solvent.

> Q. Is it accurate to say that you do not, in your report, offer the opinion that any Berryman product was a significant contributing factor in causing Mr. Rhyne's AML?
>
> A. Just give me a second. (Witness reviewing document.) I'm just double-checking to make sure that what I'm referring to in my reports by different names—that none of them represent a Berryman product. (Witness reviewing computer.) That is correct; I don't see any Berryman products.
>
> Q. Doctor, is it accurate to say that you do not, in your report, offer the opinion that any Gulf Oil product was a significant contributing factor in causing Mr. Rhyne's AML?
>
> A. (Witness reviewing computer.) That's correct.

Exh. M at 166:17–167:9.

\* \* \*

5

Q. Is it accurate to say that you do not, in your report, offer the opinion that any 3M product was a significant contributing factor in causing Mr. Rhyne's AML?

A. That's correct. May I just add one caveat, and that is that the manufacturers that you've mentioned to me so far are not the manufacturers of the different brands that have been identified, that I know about from deposition testimony or Dr. Herrick's or Mr. Petty's report. I don't know if those are the manufacturers of the ingredients that were supplied to those manufacturers that then sold the products under different brand names. So let me just say, you know, that I haven't identified any of those brand names thus far, but to the extent that they might have been, you know, producers of, let's say, the petroleum product that went into a mineral spirit, that might be important.

Q. Well, Doctor, do you have any evidence that Berryman provided any ingredient to any product that Mr. Rhyne was exposed to or worked with?

A. Again, I don't have any—I don't have any of that evidence; I don't have any information.

Q. All right. And is it fair to say that you don't have any information that Gulf Oil had a solvent in any product that Mr. Rhyne worked with or around?

A. That's correct; I don't have that information.

*Id.* at 167:16–168:17.

\*     \*     \*

Q. The same is true of 3M?

A. That is correct.

Q. Doctor, is it accurate to say that you do not, in your report, offer the opinion that any Chevron product was a significant contributing factor in causing Mr. Rhyne's AML?

A. That is correct.

Q. All right. And is it fair to say that you do not have any information that Chevron supplied any solvent to any product to which Mr. Rhyne—or with which Mr. Rhyne worked or to which he was exposed?

6

A. That is correct.

*Id.* at 168:20–169:6.

Mr. Infante also testified that he had no information that Mr. Rhyne had ever worked with any Gulf, Chevron, Berryman, or 3M product. Exh. N at 124:19–126:12; 127:11–129:7.

Given that Plaintiffs' claims against Chevron rest on Plaintiffs' allegation that Mr. Rhyne worked with Gulf gasoline, and Berryman B-12 Chemtool and 3M products that contained Chevron and Gulf solvents, given that there is no evidence Mr. Rhyne ever worked with any of those products, and given the absence of any expert opinion that Gulf gasoline, Berryman B-12 Chemtool, or a 3M product (much less B-12 Chemtool or 3M products containing Gulf or Chevron solvents) was a substantial contributing cause of Mr. Rhyne's AML, Plaintiffs' claims against Chevron should be dismissed on summary judgment.

## ARGUMENT

### A. Legal Standard for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is "no genuine issue as to any material fact . . . because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322–23 (1986). To defeat a summary judgment motion, the nonmoving party must provide more than "merely colorable" evidence. Instead, it must show evidence that is "significantly probative" and supports her complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). To do so, the nonmoving party cannot simply rely on the mere allegations or denials of the adverse party's pleading, but instead must show specific facts to support the contention that there is a genuine issue for trial. *U.S. v. $95,945.18, U.S. Currency*, 913 F.2d 1106, 1111 (4th Cir. 1990) (citing *Boas v. Smith*, 786 F.2d 605, 609 (4th Cir. 1986)); *see also Anderson*, 477 U.S. at 252 ("The

mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."). Without evidence upon which a jury could reasonably find for the non-moving party, summary judgment should be granted. *Anderson*, 477 U.S. at 252.

> **B. Chevron is Entitled to Summary Judgment Because There is No Evidence Mr. Rhyne Worked With a Chevron (or Gulf) Product**

Under the North Carolina Products Liability Act, a plaintiff bringing a product liability action must establish that the subject product caused his alleged injury. N.C. Gen. Stat. § 99B-1(3).[8] Naturally, if a plaintiff suing for injury caused by a defendant's product cannot show that he used was exposed to that defendant's product, his claims against that defendant must be dismissed. *See Starnes v. A.O. Smith Corp.*, No. 1:12–CV–360, 2014 WL 4744782, at *2–3 (W.D.N.C. Sept. 23, 2014) (granting summary judgment to defendants where plaintiff failed to present evidence he was exposed to defendants' products); *Mullis v. Armstrong Int'l, Inc.*, No. 2:12-60155, 2013 WL 5548838, at *1 n.1 (E.D. Pa. Aug. 20, 2013) (under North Carolina law, granting summary judgment to defendant in the absence of evidence decedent was exposed to dust from defendant's products as opposed to from another manufacturer's or supplier's products); *Elledge v. Pepsi Cola Bottling Co. of Winston-Salem*, 113 S.E.2d 435, 436 (N.C. 1960) (affirming dismissal when plaintiff did not show defendant manufactured product at issue); *see also Griffin v. Tenneco Resins, Inc.*, 648 F. Supp. 964, 966–67 (W.D.N.C. 1986) (summarizing cases applying North Carolina law and holding that North Carolina courts do not apply "market share liability" theory or other "exotic" theories in product liability cases).

---

[8] The statue defines "product liability action" as including "any action brought for or on account of personal injury . . . caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling of any product." *Id.*

Plaintiffs' claims against Chevron rest on their allegation that Mr. Rhyne worked with Gulf gasoline, and with Berryman B-12 Chemtool and 3M products that contained Gulf and Chevron solvents. Yet, as discussed, there is no evidence that Mr. Rhyne ever worked with Gulf gasoline, just as there is no evidence he ever worked with B-12 Chemtool or 3M products, much less B-12 Chemtool or 3M products that contained Chevron or Gulf solvents. The absence of any such evidence is fatal to Plaintiffs' complaint against Chevron.

### C. Chevron is Entitled to Summary Judgment Because There is No Evidence any Chevron (or Gulf) Product was a Substantial Contributing Cause of Mr. Rhyne's AML

Even if Plaintiffs could raise a genuine issue of material fact concerning whether Mr. Rhyne was ever exposed to Gulf gasoline or to B-12 Chemtool or 3M products that contained Chevron or Gulf solvents (and they cannot), Plaintiffs would still have no evidence that any such exposure was a substantial contributing cause of Mr. Rhyne's AML.

Under North Carolina law, a plaintiff in a products liability action must present evidence that the product at issue was a substantial cause of the claimed injury. *See, e.g.*, *Agner v. Daniel Int'l Corp.*, No. 3:98-cv-220, 2007 WL 57769, at *4 (W.D.N.C. Jan. 5, 2007) (plaintiff alleging injury must prove the underlying product was "a substantial factor in causing his damages."). In exposure cases, that means a plaintiff must show "more than a casual or minimum contact with the product." *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1163 (4th Cir. 1986). To establish liability, the plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.*; *see also Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 716 (4th Cir. 1995) (applying *Lohrmann* to North Carolina law). A plaintiff must satisfy the "frequency, regularity and proximity test" from *Lohrmann* and *Jones* with respect to each defendant in a case. *See Agner*, 2007 WL 57769, at *4. When the plaintiff cannot meet the *Lohrmann/Jones*

9

test for a particular defendant's product, that defendant is entitled to summary judgment. *See, e.g.*, *Finch v. BASF Catalysts LLC*, No. 1:16-cv-1077, 2018 WL 4101828, at *6–8 (M.D.N.C. Aug. 22, 2018) (granting summary judgment to defendant manufacturer where plaintiff failed to present evidence of requisite frequency, regularity, or proximity in connection with alleged exposure); *Young v. Am. Talc Co.*, No. 1:13-cv-864, 2018 WL 9801011, at *5 (M.D.N.C., Aug. 3, 2018) (granting summary judgement to defendant where plaintiff could not establish the length of decedent's exposure to defendant's turbines); *Mattox v. Am. Standard, Inc.*, No. 2:07-73489, 2012 WL 7760052, at *1, n.1 (E.D. Pa. Oct. 31, 2012) (applying North Carolina law, granting summary judgement to defendant when plaintiff could not show the frequency or regularity of decedent's exposure to defendant's product). Of course, this principle is especially applicable where, as here, the plaintiff cannot provide evidence that he was exposed to a defendant's products at all. *See Queen v. CBS Corp.*, No. 1:16-cv-00330, 2017 WL 6190941, at *2 (M.D.N.C. Dec. 7, 2017) ("It is axiomatic that in the absence of any demonstrated exposure, a defendant's product cannot be a factor, must less a substantial factor, in a plaintiff's disease.").

Separately, North Carolina also requires that when the alleged injury is medically complicated, the plaintiff must provide an expert opinion that the product at issue was a substantial cause of the injury alleged. *See Cheek v. Danek Med., Inc.*, No. 6:96-CV-00995, 1999 WL 613321, at *3 (M.D.N.C. March 9, 1999) ("[w]hen an injury is complicated . . . expert medical testimony on the issue of causation must be provided") (citing *Click v. Pilot Freight Carriers, Inc.*, 265 S.E.2d 389, 391 (N.C. 1980)); *Miller v. Lucas,* 147 S.E.2d 537, 547 (N.C. 1966) ("Where a layman can have no well-founded knowledge and can do no more than indulge in mere speculation (as to the cause of a physical condition), there is no proper

10
Case 3:18-cv-00197-RJC-DSC   Document 138   Filed 11/29/19   Page 10 of 13

foundation for a finding by the trier without expert medical testimony.") (internal citation omitted); *Gillikin v. Burbage*, 139 S.E.2d 753, 760 (N.C. 1965) (where "the subject matter . . . is so far removed from the usual and ordinary experience of the average man . . . only an expert can competently give opinion evidence as to the cause of death, disease, or a physical condition") (internal citation omitted)).

Here, Plaintiffs' allegations raise an issue that a North Carolina court has already held is "medically complicated": whether exposure to particular benzene-containing products caused a plaintiff to contract AML. *Scearce v. Chemtek, Inc.*, No. COA12-345, 2012 WL 5395033, at *8 (N.C. Ct. App. Nov. 6, 2012) (whether plaintiff contracted AML because of exposure to benzene-containing products involved "complicated medical questions," in connection with which "only an expert can give competent opinion testimony as to the issue of causation." (quoting *Kelly v. Duke Univ.*, 661 S.E.2d 745, 748 (N.C. Ct. App. 2008)). Thus, in order to avoid summary judgment, Plaintiffs would have had to provide an opinion from a medical expert that Mr. Rhyne's exposure to Gulf gasoline or to B-12 Chemtool or 3M products that contained Chevron or Chevron solvents, was a substantial cause of his AML. *See Lipscomb v. Orkin, Inc.*, No. 5:13-cv-111, 2014 WL 3510117, at *2–3 (E.D.N.C. July 14, 2014) (granting summary judgment to defendant where plaintiff did not provide expert opinion that his injury was caused by exposure to pesticides); *see also Yates v. Ford Motor Co.*, No. 5:12-cv-752, 2015 WL 9222834, at *2 (E.D.N.C. Dec. 17, 2015) (granting summary judgment to defendants in mesothelioma case after court excluded testimony from plaintiff's expert, such that plaintiff lacked sufficient evidence to establish causation against remaining defendants).

As discussed, Plaintiffs named three medical causation experts and an expert in industrial hygiene, yet none of them offers the opinion that any of the products upon which Plaintiffs base

11
Case 3:18-cv-00197-RJC-DSC   Document 138   Filed 11/29/19   Page 11 of 13

their claims against Chevron (Gulf gasoline, B-12 Chemtool and 3M products) was a substantial contributing cause of Mr. Rhyne's AML. In fact, none of the experts was even aware that Mr. Rhyne had ever been exposed to any of those products. Plaintiffs' failure to provide the requisite expert opinion on causation is also fatal to their claims against Chevron.

## CONCLUSION

Because Plaintiffs have no evidence that Mr. Rhyne was exposed to the products for which Plaintiffs allege Chevron bears responsibility in this matter—Gulf gasoline, Berryman B-12 Chemtool and 3M products—much less on a regular, frequent, and proximate basis, and no expert has offered an opinion that exposure to Gulf gasoline, B-12 Chemtool or a 3M product was a substantial cause of Mr. Rhyne's AML, Chevron's motion should be granted and Plaintiffs' claims against Chevron should be dismissed on summary judgment.

/s/ Timothy Peck
Timothy Peck (N.C. Bar No. 9991)
Attorney for Defendant Chevron U.S.A. Inc.
Fox Rothschild LLP
300 N. Greene St., Suite 1400
Greensboro, NC 27401
Telephone: (336) 378-5200
Fax: (336) 378-5400
E-mail: tpeck@foxrothschild.com

Andrew P. Fishkin (admitted *pro hac vice*)
Attorney for Defendant Chevron U.S.A. Inc.
Fishkin Lucks LLP
One Riverfront Plaza
Suite 410
Newark, NJ 07102
Telephone: (973) 536-2800
Fax: (973) 679-4435
E-mail: afishkin@fishkinlucks.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 29, 2019, I electronically filed the foregoing "Defendant Chevron USA Inc.'s Memorandum of Law in Support of Summary Judgment" along with the exhibits thereto with the Clerk of the United States District Court for the Western District of North Carolina using the CM/ECF system which will send notification of this filing and an electronic copy of same to all counsel of record registered with the CM/ECF system, and I hereby certify that I have thereby electronically served the document upon all counsel in this action registered with the CM/ECF system.

This is the 29th day of November, 2019.

/s/ Timothy Peck
Timothy Peck (N.C. Bar No. 9991)
Attorney for Defendant Chevron U.S.A. Inc.
Fox Rothschild LLP
300 N. Greene St., Suite 1400
Greensboro, NC 27401
Telephone: (336) 378-5200
Fax: (336) 378-5400
E-mail: tpeck@foxrothschild.com