IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

BRUCE RHYNE and JANICE RHYNE, )   Case No.: 3:18-cv-00197-RJC-DSC
       Plaintiffs, )
v. )
UNITED STATES STEEL )
CORPORATION, et al., )
       Defendants. )

**DEFENDANT UNIVAR USA INC.'S MEMORANDUM OF LAW
IN SUPPORT OF SUMMARY JUDGMENT**

    Plaintiffs seek damages claiming that Mr. Rhyne contracted Acute Myelogenous Leukemia ("AML") from exposure to alleged benzene-containing products. Defendant Univar USA Inc. ("Univar") is entitled to summary judgment because there is no evidence that Mr. Rhyne ever worked with a Univar product, much less that a Univar product was a substantial contributing cause of his alleged injury.

**FACTS**

    A.    **Background**

    Plaintiffs Bruce Rhyne and his wife, Janice Rhyne, brought this action in April 2018, seeking damages claiming that Mr. Rhyne contracted AML from working with defendants' alleged benzene-containing products. Complaint ¶¶ 1, 19–22, ECF No. 1. Plaintiffs allege that several of the dozen named defendants manufactured, supplied, or otherwise bear responsibility for "finished" "benzene-containing products" to which they claim Mr. Rhyne was exposed, including Safety-Kleen Systems, Inc. parts-washing solvents ("parts-wash solvent") and CRC Industries, Inc. ("CRC") 3-36. *Id.* ¶¶ 29–30. Plaintiffs allege that Univar manufactured or

supplied a solvent (mineral spirits) that was used as a component ingredient in Safety-Kleen parts-wash solvent, and other solvents ("toluene, xylene, hexane, mineral spirits, and naphthas") that were used as component ingredients in CRC 3-36.[1]  *Id*. ¶ 32.[2]  Univar denied the material allegations in the Complaint.  Univar's Answer, ECF No. 49.

### B. Absence of Product Identification as to Univar

#### 1. *Safety-Kleen parts-wash solvent*

For purposes of the instant motion only, Univar does not contest that Mr. Rhyne was exposed to Safety-Kleen parts-wash solvent, that mineral spirits was a component of the parts-wash solvent, or that at various times Univar supplied mineral spirits to Safety-Kleen.  However, Univar was never the exclusive manufacturer or supplier of mineral spirits contained to Safety-Kleen.  To the contrary, Safety-Kleen purchased mineral spirits from many different companies.  And with discovery now closed, there is no evidence that any Safety-Kleen parts-wash solvent with which Mr. Rhyne worked contained mineral spirits manufactured or supplied by Univar, as

---

[1] While their pleadings were less than specific concerning the CRC product at issue, through expert discovery, Plaintiffs narrowed their claim to allege that CRC 3-36 was the only CRC product with which Mr. Rhyne worked.  *See* exh. A (expert report; Robert Herrick, M.S.) at 30.

[2] A solvent is any substance that dissolves a solute, resulting in a solution.  The solvents at issue here, which are derived crude oil, may have contained trace amounts of naturally occurring benzene.  However, these solvents have their own unique toxicological profiles, which are not influenced by the presence of trace levels of benzene, and the available scientific and medical literature does not support that even high occupational exposures to them are established etiological risk factors in the development of AML (or any other human cancer).  Thus, no agency or scientific body including the Occupational Safety and Health Administration (OSHA), American Conference of Governmental Industrial Hygienists (ACGIH), International Agency for Research on Cancer (IARC), World Health Organization (WHO), US Environmental Protection Agency (EPA), Agency for Toxic Substances and Disease Registry (ATSDR) or National Toxicology Program has regulated or described these solvents as carcinogenic.  *See* exh. B (expert report; David Pyatt, Ph.D.) at 12–15.

opposed to by one or more of the many other companies from which Safety-Kleen purchased mineral spirits.

Safety-Kleen used in its parts-wash solvent mineral spirits that was manufactured or supplied by at least twelve different manufacturers and suppliers.

Plaintiffs admit that Safety-Kleen used in its parts-wash solvent mineral spirits that was manufactured or supplied by defendant Sunoco. Complaint ¶ 27; exhs. C (Plaintiffs' Settlement Conference Memorandum ("Conference Memo")) at 6 (stating Mr. Rhyne "was exposed to benzene-containing solvents that Defendant Sunoco supplied . . . including mineral spirits supplied to Safety-Kleen and used in its parts-washing solvent");[3] D (Plaintiffs' Objections and Answers to Defendant ExxonMobil Corp.'s ("Exxon") Interrogatories) at 12; E (Plaintiffs' Responses to Defendant The Savogran Company's Interrogatories) at 10; F (Plaintiffs' Answers and Objections to Defendant CRC's Interrogatories) at 7.[4]

Plaintiffs admit that Safety-Kleen also used in its parts-wash solvent mineral spirits that was manufactured or supplied by defendant Exxon. Complaint ¶ 37; exh. C at 8–9 (stating Exxon "mineral spirits [was] used in Safety-Kleen parts-washing solvents.").

Plaintiffs admit that Safety-Kleen also used in its parts-wash solvent mineral spirits that was manufactured or supplied by (former defendant) Ashland. Exhs. G (Plaintiff's Responses to

---

[3] Plaintiffs originally brought their claims in the Court of Common Pleas of Philadelphia County ("Philadelphia Action") but refiled them here after the Philadelphia Action was dismissed based on *forum non conveniens*. Complaint ¶ 2. The dismissal has since been affirmed on appeal. *Rhyne v. U.S. Steel Co.*, No. 432 EAL 2018, 13–14 (Pa. Super. Ct. Feb. 22, 2019), *appeal denied*, No. 126 EAL 2019 (Pa. Sept. 9, 2019).

[4] All discovery taken in the Philadelphia Action applies here. Pretrial Order and Case Management Plan at 2 n.2, ECF No. 94 ("to avoid undue delay, all discovery already conducted in the proceedings of this case in the Court of Common Pleas Philadelphia County, before the case was filed in the Western District of North Carolina, shall apply in this Court to these proceedings.").

the Interrogatories of (former Defendant) Ashland, Inc. ("Ashland")) at 7 (stating Safety-Kleen parts-wash solvent contained Ashland mineral spirits); C at 8 (stating Ashland "mineral spirits [were] used in Safety-Kleen parts-washing solvents.").

Plaintiffs admit that Safety-Kleen also used in its parts-wash solvent mineral spirits that was manufactured or supplied by (former defendant) Kendall Refining Company ("Kendall"). Exhs. C at 7 (stating Safety-Kleen parts-wash solvent contained Kendall mineral spirits); E at 10; F at 7.

Plaintiffs admit that Safety-Kleen also used in its parts-wash solvent mineral spirits that was manufactured or supplied by (former defendant) Hunt Oil Company ("Hunt"). Exhs. C at 7 (stating Safety-Kleen parts-wash solvent contained Hunt mineral spirits); D at 12; E at 10; F at 7. *See also* exh. H (Hunt's Response to Plaintiffs' Requests for Admissions, *Jones v. Sunoco, Inc.*, PCCP, February Term, 2016, No. 4098) at 4 (Hunt admitting that it supplied mineral spirits to Safety-Kleen prior to November 1, 1986).

Plaintiffs admit that Safety-Kleen also used in its parts-wash solvent mineral spirits that was manufactured or supplied by (former defendant) Witco Corporation. Exhs. C at 7; D at 12; E at 10; F at 7.

Plaintiffs admit that Safety-Kleen also used in its parts-wash solvent mineral spirits that was manufactured or supplied by (former defendant) Chemtura Corporation. Exh. C at 8.

An internal Safety-Kleen memorandum, titled "Virgin Parts Washer Solvents Benzene Data Compilation," dated Aug. 20, 1993 ("SK 1993 Memo"), lists Sun Refining ("Sun") among the many different "solvent vendors" for Safety-Kleen parts-wash solvent. Exh. I at SKS-WHEE 007878, 007890–007894. Another internal Safety-Kleen memorandum, dated May 6, 1992

("SK 1992 Memo"), also lists Sun among Safety-Kleen's many different solvent suppliers. Exh. J at SKS-WHEE 010764.

The SK 1993 Memo and SK 1992 Memo also include Kerr-McGee among Safety-Kleen's different "solvent vendors" for parts-wash solvent. Exhs. I at SKS-WHEE-007878, 007896–007899; J at SKS-WHEE 010758, 010764–010765.

Neville Chemical Company admits that it was another supplier of mineral spirits to Safety-Kleen. Exh. K (Letter from Neville Chemical Company to Safety-Kleen, dated August 30, 1977) at SKS-WHEE-007785.

And, finally, an internal Safety-Kleen memorandum dated June 20, 1990 ("SK 1990 Memo") and the SK 1992 Memo also lists Trimont Chemicals among Safety-Kleen's many different solvent suppliers. Exhs. L (SK 1990 Memo) at SKS-WHEE-007860; J at SKS-WHEE 010758, 010764–010765.

With discovery now closed, there is no evidence that any Safety-Kleen parts-wash solvent with which Mr. Rhyne worked contained mineral spirits manufactured or supplied by Univar, as opposed to by one or more of the many other companies whose mineral spirits Safety-Kleen also used in its parts-wash solvent.

    2.    *CRC 3-36*

Univar disputes there is any evidence Mr. Rhyne was exposed to the CRC product at issue (CRC 3-36).[5] Yet, even if Univar does not contest (for purposes of this motion only) that Mr. Rhyne was exposed to CRC 3-36, does not contest that CRC 3-36 contained petroleum-based solvent ingredients, and does not contest that at various times Univar was a supplier of

---

[5] In this regard, Univar relies on the motion for summary judgment filed by CRC. ECF Nos. 135, 136. The absence of evidence that Mr. Rhyne was ever exposed to CRC 3-36, as addressed in detail in CRC's motion, is dispositive of Plaintiffs' claims against Univar to the extent they are based on Plaintiffs' allegation that one or more Univar solvents were contained in CRC 3-36.

solvents to CRC, Univar was never CRC's exclusive solvent supplier. To the contrary, the solvents CRC used in its products were manufactured and supplied by many different companies.

Plaintiffs admit that CRC used in its products "toluene, xylene, hexane, mineral spirits, and naphthas and other benzene-containing components" that were manufactured or supplied by Sunoco. Complaint ¶ 27; exhs. C at 6 ("Plaintiff was exposed to benzene-containing solvents that Defendant Sunoco supplied . . . including . . . toluene, xylene, hexane, mineral spirits, naphthas and other benzene-containing solvents supplied to . . . CRC Industries, Inc. for use in" its products.); D at 13; E at 10; F at 7.

Plaintiffs admit that CRC also used in its products "toluene, xylene, hexane, mineral spirits, and naphthas and other benzene-containing components" that were manufactured or supplied by Exxon. Complaint ¶ 37; exhs. C at 8–9 (stating Exxon Mobil supplied "toluene, xylene, hexane, mineral spirits, and naphthas and other benzene-containing solvents used in CRC . . . products."); D at 13; E at 10.

Plaintiffs admit that CRC also used in its products xylene, toluene, hexane, mineral spirits, naphthas and other benzene-containing solvents that were manufactured or supplied by Ashland. Exhs. C at 8; D at 13; E at 10; F at 7; G at 7.

And, finally, Plaintiffs admit that CRC also used in its products toluene, xylene, and other solvents that were manufactured or supplied by Chevron. Exhs. D at 13; E at 10; F at 7.

With discovery now closed, there is no evidence that any CRC 3-36 to which Mr. Rhyne was exposed contained solvents manufactured or supplied by Univar, as opposed to by one or more of the many other companies whose solvents CRC also used as component ingredients in its products.

### C. Absence of Evidence Any Univar Product Was a Substantial Contributing Cause of Mr. Rhyne's Alleged Injury

Even if Plaintiffs had proof that the Safety-Kleen parts-wash solvent or CRC 3-36 with which Mr. Rhyne alleges he worked did, on at least one occasion, contain a Univar solvent—and they do not—Plaintiffs are still without evidence that Mr. Rhyne was exposed to Safety-Kleen parts-wash solvent or CRC 3-36 containing one or more Univar solvents on a regular basis over some extended period of time. Once again, Plaintiffs cannot identify any date on which Mr. Rhyne was exposed to Safety-Kleen parts-wash solvent or CRC 3-36 that contained a Univar solvent, much less can they identify any period of time during which he regularly worked with a Univar solvent.

Given the absence of any factual basis for their claim that Mr. Rhyne was ever exposed to a Univar solvent, predictably, Plaintiffs also do not present an expert opinion that any Univar product was a substantial contributing cause of Mr. Rhyne's illness.

Plaintiffs named three "medical causation" experts in this matter: Robert Harrison, M.D., an occupational medicine physician; Peter Infante, an epidemiologist; and Steven Gore, M.D., a hematologist/oncologist. Exh. M (Plaintiffs' Rule 26(a)(2) Disclosures).[6] As expected, each of Plaintiffs' experts purport to associate Mr. Rhyne's AML with exposure to one or more defendants' alleged benzene-containing products. However, none of the experts offers the opinion that a Univar product caused or was a substantial contributing factor to the AML. In fact, none of the experts' reports even mentions Univar or a Univar product.

At deposition, Dr. Harrison admitted he had no information that any product Mr. Rhyne worked with or around contained a Univar solvent, exh. Q at 168:14–19, and that he did not, in

---

[6] These experts' reports are exhs. N (expert report; Robert Harrison, M.D.); O (expert report; Peter Infante); P (expert report; Steven Gore, M.D.).

his expert report, offer the opinion that any Univar product was a substantial contributing cause of Mr. Rhyne's AML. *Id*. at 167:10–15.  Mr. Infante also admitted at his deposition that he saw no evidence that allowed him to conclude Mr. Rhyne was ever exposed to a Univar product, exh. R at 126:13–18, much less that a Univar product was a cause or substantial contributing cause in the development of his AML.

In his expert report, Dr. Gore opines that Mr. Rhyne's exposures to benzene from certain defendants' finished products, as calculated by Stephen Petty,[7] "were of themselves, capable of causing his AML," exh. P at 13, 20–21 (¶ 31), and since "every [other] non-trivial exposure to benzene should [also] be considered a substantial factor that contributed to that individual's AML . . . Bruce Rhyne's exposures to benzene from products manufactured, supplied or sold by [other] defendants in this case were [also] each substantial factors in the development of Mr. Rhyne's AML." *Id*. at 20–21 (¶ 31).  Dr. Gore's causation opinion does not implicate Univar for two reasons:  (i) Mr. Petty did not calculate that Mr. Rhyne had exposure to benzene from a Univar product, see exh. S; and (ii) there is no evidence Mr. Rhyne had any exposure to a Univar product, much less non-trivial benzene exposure from a Univar product.  At deposition, Dr. Gore admitted he was unaware of any evidence that Mr. Rhyne had been exposed to a Univar product.  Exh. T at 86:10–19; 88:5–16.

Plaintiffs also named as one of their experts, Robert Herrick, M.S., an industrial hygienist.  Exh. M.  Based on his review of the record, Dr. Herrick determined the amount of benzene to which he believed Mr. Rhyne had been exposed and the products from which he believed Mr. Rhyne had been exposed to that benzene.  In his expert report, Dr. Herrick offers

---

[7] Mr. Petty is an industrial hygienist whom Plaintiffs retained as one of their experts in the Philadelphia Action.  Exh. S (expert report; Stephen Petty).  Plaintiffs did not include Mr. Petty in their Rule 26(a) disclosures in this action.  Exh. M.

the opinion that Mr. Rhyne's cumulative dose exposure to benzene was from several defendants' finished products, none of which was a product manufactured or supplied by Univar. Exh. A at 39 (Table 3), 43 (Table 4). In fact, Dr. Herrick does not even mention Univar or identify a Univar product in his report. *See* exh. A. At his deposition, Dr. Herrick admitted he had no information about the different manufacturers and suppliers of solvent ingredients contained in the finished products that Mr. Rhyne worked with, exh. U at 48:5–22, and that he was unable to identity the party or parties that supplied or manufactured mineral spirits contained in any Safety-Kleen parts-wash solvent, or solvents contained in any CRC 3-36, with which Mr. Rhyne allegedly worked. *Id*. at 49:23–50:22.

## ARGUMENT

### A. Legal Standard for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is "no genuine issue as to any material fact . . . because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322–23 (1986). To defeat a summary judgment motion, the nonmoving party must provide more than "merely colorable" evidence. Instead, it must show evidence that is "significantly probative" and supports her complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). To do so, the nonmoving party cannot simply rely on the mere allegations or denials of the adverse party's pleading, but instead must show specific facts to support the contention that there is a genuine issue for trial. *U.S. v. $95,945.18, U.S. Currency*, 913 F.2d 1106, 1111 (4th Cir. 1990) (citing *Boas v. Smith*, 786 F.2d 605, 609 (4th Cir. 1986)); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient."). Without evidence upon which a jury could reasonably find for the non-moving party, summary judgment should be granted. *Anderson*, 477 U.S. at 252.

> **B. Univar is Entitled to Summary Judgment Because There is No Evidence Mr. Rhyne Worked With a Univar Product**

Under the North Carolina Products Liability Act, a plaintiff bringing a product liability action must establish that the subject product caused his alleged injury. N.C. Gen. Stat. § 99B-1(3).[8] Naturally, if a plaintiff suing for injury caused by a defendant's product cannot show that he was exposed to that product, his claims against that defendant must be dismissed. *See*, *Starnes v. A.O. Smith Corp.*, No. 1:12–CV–360, 2014 WL 4744782, at *2–3 (W.D.N.C. Sept. 23, 2014) (granting summary judgment to defendants where plaintiff failed to present evidence he was exposed to defendants' products); *Mullis v. Armstrong Int'l, Inc.,* No. 2:12-60155, 2013 WL 5548838, at *1 n.1 (E.D. Pa. Aug. 20, 2013) (under North Carolina law, granting summary judgment to defendant in the absence of evidence decedent was exposed to dust from defendant's products as opposed to from another manufacturer's or supplier's products); *Elledge v. Pepsi Cola Bottling Co. of Winston-Salem*, 113 S.E.2d 435, 436 (1961) (affirming dismissal when plaintiff did not show defendant manufactured product at issue); *see also Griffin v. Tenneco Resins, Inc.*, 648 F. Supp. 964, 966–67 (W.D.N.C. 1986) (summarizing cases applying North Carolina law and holding that North Carolina courts do not apply "market share liability" theory or other "exotic" theories in product liability cases).

There is no evidence Mr. Rhyne was ever exposed to a Univar product. Plaintiffs claim that Mr. Rhyne was exposed to benzene from working with or around Safety-Kleen parts-wash

---

[8] The statue defines "product liability action" as including "any action brought for or on account of personal injury . . . caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling of any product." *Id.*

10

Case 3:18-cv-00197-RJC-DSC   Document 142   Filed 11/29/19   Page 10 of 17

solvent that contained Univar mineral spirits. While Univar does not contest in this motion that Mr. Rhyne worked with Safety-Kleen parts-wash solvent, that mineral spirits was a component of the parts-wash solvent, or that at various times Safety-Kleen purchased mineral spirits from Univar, as discussed above, Univar was never the exclusive mineral spirits supplier to Safety-Kleen. To the contrary, as discussed, Safety-Kleen used mineral spirits in its parts-wash solvent that was manufactured and supplied by at least a dozen different companies. And with discovery now closed, there is no evidence that any Safety-Kleen parts-wash solvent with which Mr. Rhyne worked contained mineral spirits manufactured or supplied by Univar, as opposed to by one or more of those many other companies.

Plaintiffs also claim that Mr. Rhyne was exposed to benzene from working with CRC 3-36 that contained Univar solvents. As discussed above, Univar disputes there is any evidence Mr. Rhyne worked with CRC 3-36. Yet, even if Univar did not contest (for purposes of this motion only) Mr. Rhyne's alleged exposure to that product, and does not contest that CRC 3-36 contained solvent ingredients or that at various times it may have contained one or more Univar solvents, Univar was never the exclusive manufacturer or supplier of solvents contained in any CRC product. To the contrary, as discussed, CRC used solvents in its products that were manufactured or supplied by many different companies. And with discovery now closed, there is no evidence that any CRC 3-36 product with which Mr. Rhyne worked contained solvents manufactured or supplied by Univar, as opposed to by one or more of those other companies.

Plaintiffs' failure to demonstrate that Mr. Rhyne was exposed to a Univar solvent places this case "on all fours" with a product liability case from the United States District Court for the Eastern District of Pennsylvania, where the court applied North Carolina law, *Coble v. 3M Co.*, No. 2:10-cv-64613, 2011 WL 7573806 (E.D. Pa. Dec. 22, 2011). In that case, plaintiff claimed

the decedent had been injured in part from exposure to asbestos in Red Top and Gold Bond joint compounds. *Id.* at *1 n.1. Defendant Union Carbide moved for summary judgment, arguing that it was only one of four suppliers of raw asbestos used in Gold Bond and only one of nine suppliers of asbestos used in Red Top, and that plaintiff had failed to present evidence the Red Top and Gold Bond products to which the decedent was exposed contained Union Carbide asbestos as opposed to asbestos supplied by any one or more of the other suppliers of asbestos for those products. *Id.* The court awarded Union Carbide summary judgment against plaintiff's claims concerning those products, finding "there is no evidentiary basis from which a jury could conclude that the asbestos to which the Decedent may have been exposed . . . was supplied by Union Carbide as opposed to some other company that supplied asbestos for these products." *Id.* Here, as in *Coble*, there is no evidentiary basis from which a jury could conclude that Mr. Rhyne was exposed to mineral spirits (in Safety-Kleen parts-wash solvent) or solvents (in CRC 3-36) that were manufactured or supplied by Univar, as opposed to some other company or companies that manufactured and supplied those component ingredients to Safety-Kleen and CRC.

The absence of evidence from which a jury can conclude that Mr. Rhyne was exposed to a Univar solvent is fatal to Plaintiffs' complaint against Univar.

### C. Univar is Entitled to Summary Judgment Because There is No Evidence any Univar Product was a Substantial Contributing Cause of Mr. Rhyne's AML

Even if Plaintiffs could raise a genuine issue of material fact concerning whether Mr. Rhyne was ever exposed to a Univar solvent (and they cannot), Plaintiffs would still be without evidence that any such exposure was a substantial contributing cause of Mr. Rhyne's AML. Under North Carolina law, a plaintiff in a products liability action must present evidence that the product at issue was a substantial cause of the claimed injury. *See, e.g., Agner v. Daniel Int'l Corp.*, No. 3:98-cv-220, 2007 WL 57769, at *4 (W.D.N.C. Jan. 5, 2007) (plaintiff alleging

12

injury must prove the underlying product was "a substantial factor in causing his damages."). In exposure cases, that means a plaintiff must show "more than a casual or minimum contact with the product." *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1163 (4th Cir. 1986). To establish liability, the plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.*; *see also Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 716 (4th Cir. 1995) (applying *Lohrmann* to North Carolina law). A plaintiff must satisfy the "frequency, regularity and proximity test" from *Lohrmann* and *Jones* with respect to each defendant in a case. *See Agner*, 2007 WL 57769, at *4. When the plaintiff cannot meet the *Lohrmann/Jones* test for a particular defendant's product, that defendant is entitled to summary judgment. *See, e.g., Finch v. BASF Catalysts LLC*, No. 1:16-cv-1077, 2018 WL 4101828, at *6–8 (M.D.N.C. Aug. 22, 2018) (granting summary judgment to defendant manufacturer where plaintiff failed to present evidence of requisite frequency, regularity, or proximity in connection with alleged exposure); *Young v. Am. Talc Co.*, No. 1:13-cv-864, 2018 WL 9801011, at *5 (M.D.N.C., Aug. 3, 2018) (granting summary judgement to defendant where plaintiff could not establish the length of decedent's exposure to defendant's turbines); *Mattox v. Am. Standard, Inc.*, No. 2:07-73489, 2012 WL 7760052, at *1, n.1 (E.D. Pa. Oct. 31, 2012) (applying North Carolina law, granting summary judgement to defendant where plaintiff could not show the frequency or regularity of decedent's exposure to defendant's product). Of course, this principle is especially applicable where, as here, the plaintiff cannot provide evidence that he was exposed to a defendant's products at all. *See Queen v. CBS Corp.*, No. 1:16-cv-00330, 2017 WL 6190941, at *2 (M.D.N.C. Dec. 7, 2017) ("It is axiomatic that in the absence of any

demonstrated exposure, a defendant's product cannot be a factor, must less a substantial factor, in a plaintiff's disease.").

Separately, North Carolina also requires that when the alleged injury is medically complicated, the plaintiff must provide an expert opinion that the product at issue was a substantial cause of the injury alleged. *See Cheek v. Danek Med., Inc.*, No. 6:96-CV-00995, 1999 WL 613321, at *3 (M.D.N.C. March 9, 1999) ("[w]hen an injury is complicated . . . expert medical testimony on the issue of causation must be provided") (citing *Click v. Pilot Freight Carriers, Inc.*, 265 S.E.2d 389, 391 (N.C. 1980)); *Miller v. Lucas,* 147 S.E.2d 537, 547 (N.C. 1966) ("Where a layman can have no well-founded knowledge and can do no more than indulge in mere speculation (as to the cause of a physical condition), there is no proper foundation for a finding by the trier without expert medical testimony.") (internal citation omitted); *Gillikin v. Burbage*, 139 S.E.2d 753, 760 (N.C. 1965) (where "the subject matter . . . is so far removed from the usual and ordinary experience of the average man . . . only an expert can competently give opinion evidence as to the cause of death, disease, or a physical condition") (internal citation omitted)).

Here, Plaintiffs' allegations raise an issue that a North Carolina court has already held is "medically complicated": whether exposure to particular benzene-containing products caused a plaintiff to contract AML. *Scearce v. Chemtek, Inc.*, No. COA12-345, 2012 WL 5395033, at *8 (N.C. Ct. App. Nov. 6, 2012) (whether plaintiff contracted AML because of exposure to benzene-containing products involved "complicated medical questions," in connection with which "only an expert can give competent opinion testimony as to the issue of causation.") (quoting *Kelly v. Duke Univ.*, 661 S.E.2d 745, 748 (N.C. Ct. App. 2008)). Thus, in order to avoid summary judgment, Plaintiffs would have had to provide an opinion from a medical expert

that Mr. Rhyne's exposure to a Univar product was a substantial cause of his AML. *See Lipscomb v. Orkin, Inc.*, No. 5:13-cv-111, 2014 WL 3510117, at *2–3 (E.D.N.C. July 14, 2014) (granting summary judgment to defendant where plaintiff did not provide expert opinion that his injury was caused by exposure to pesticides); *see also Yates v. Ford Motor Co.*, No. 5:12-cv-752, 2015 WL 9222834, at *2 (E.D.N.C. Dec. 17, 2015) (granting summary judgment to defendants in mesothelioma case after court excluded testimony from plaintiff's expert, such that plaintiff lacked sufficient evidence to establish causation against remaining defendants). Here, Plaintiffs fail to provide such an expert opinion, which is also fatal to their claims against Univar.

As discussed above, Plaintiffs named three medical causation experts and an expert in industrial hygiene, yet none of them offers the opinion that a Univar product was a substantial cause of Mr. Rhyne's AML. In fact, none of the experts was even aware that Mr. Rhyne had been exposed to a Univar product.

## **CONCLUSION**

Because Plaintiffs have no evidence that Mr. Rhyne was exposed to a Univar product, much less on a regular, frequent, and proximate basis, and no expert has offered an opinion that exposure to a Univar product was a substantial cause of Mr. Rhyne's AML, Univar's motion should be granted and Plaintiffs' claims against Univar should be dismissed on summary judgment.

    /s/ Andrew P. Fishkin
Andrew P. Fishkin (admitted *pro hac vice*)
Attorney for Defendant Univar USA Inc.
Fishkin Lucks LLP
One Riverfront Plaza, Suite 410
Newark, NJ 07102
Telephone: (973) 536-2800
Fax: (973) 679-4435
E-mail: afishkin@fishkinlucks.com

  /s/ Janice Holmes
Janice Holmes (N.C. Bar No. 48533)
Attorney for Defendant Univar USA Inc.
Gallivan, White & Boyd, P.A.
1221 Main Street, Suite 1200
Columbia, SC 29201
Telephone: (803) 779-1833
Fax: (803) 779-1767
Email: jholmes@gwblawfirm.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 29, 2019, I electronically filed the foregoing "Defendant Univar USA Inc.'s Memorandum of Law in Support of Summary Judgment" with the exhibits thereto with the Clerk of the United States District Court for the Western District of North Carolina using the CM/ECF system which will send notification of this filing and an electronic copy of same to all counsel of record registered with the CM/ECF system, and I hereby certify that I have thereby electronically served the document upon all counsel in this action registered with the CM/ECF system.

This is the 29th day of November, 2019.

/s/ Andrew P. Fishkin
Andrew P. Fishkin (admitted *pro hac vice*)
Attorney for Defendant Univar USA Inc.
Fishkin Lucks LLP
One Riverfront Plaza, Suite 410
Newark, NJ 07102
Telephone: (973) 536-2800
Fax: (973) 679-4435
E-mail: afishkin@fishkinlucks.com