UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00197-RJC-DSC

| | |
|---|---|
| BRUCE RHYNE and JANICE RHYNE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES STEEL ) | |
| CORPORATION, SUNOCO, INC. (R&M), ) | ORDER |
| f/k/a Sun Company, Inc. f/k/a Sun Oil ) | |
| Company, Inc., SAFETY-KLEEN ) | |
| SYSTEMS, INC., CRC INDUSTRIES, ) | |
| INC., KANO LABORATORIES, INC., THE ) | |
| SAVOGRAN COMPANY, and TURTLE ) | |
| WAX, INC., individually and as successor ) | |
| to Marvel Oil Company, Inc., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on the following defendants' Motions for Summary Judgment:

Turtle Wax, Inc. (Doc. No. 133),

Defendant CRC Industries, Inc. (Doc. No. 135),

Defendant United States Steel Corporation (Doc. No. 139), and

Defendant Sunoco (R&M), LLC (Doc. No. 127).[1]

---

[1] Defendant Kano Laboratories, Inc. also filed a motion for summary judgment. (Doc. No. 131.) which was rendered moot by the day before hearing settlement. The Court is informed that he parties will file a stipulation of dismissal with prejudice once the parties formalized the settlement agreement. As a result, the Court does not rule on Kano's motion at this time. If the parties do not file a stipulation of dismissal within thirty (30) days of the date of this Order, the Court will rule on Kano's motion.

## I. OVERVIEW

This is a toxic tort action brought by Bruce Rhyne and his wife, Janice Rhyne, arising out of Mr. Rhyne's diagnosis with acute myeloid leukemia ("AML"). Plaintiffs allege that Mr. Rhyne was diagnosed with AML as a result of his exposure to benzene in various products manufactured by Defendants. Mr. Rhyne's alleged exposure to Defendants' benzene-containing products occurred as follows:

- Performing non-occupational work at home from approximately 1970 to 1975/1976;
- In his high school mechanic class from approximately 1974 to 1975; and
- During his employment with Duke Energy at the below facilities:
  - McGuire Plant (Huntersville, NC) from 1976 to 1983 and January 2015 to May 2015;
  - Catawba Plant (York, SC) from 1983 to January 2015;
  - Cliffside Steam Plant (Cliffside, NC) in April 1985;
  - Oconee Plant (Seneca, SC) from December 1986 to February 1987; and
  - Allen Steam Station (Belmont, NC) from September to December 1987. (Doc. No. 1, ¶ 19.)

Plaintiffs bring five claims against all Defendants: (1) negligence, (2) gross negligence, (3) breach of implied warranty, (4) fraudulent concealment, and (5) loss of consortium. Defendants filed motions for summary judgment on all claims. On February 26, 2020, the Court held oral argument on the pending motions. Having been fully briefed and argued, the motions are now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

2

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation marks omitted). This "burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. The nonmoving party may not rely upon mere allegations or denials of allegations in the pleadings to defeat a motion for summary judgment; rather, it must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Id. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences therefrom in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson,

3

477 U.S. at 248–49. "If the evidence is merely colorable or is not significantly probative," summary judgment is appropriate. Id. at 249–50 (citations omitted).

III. DISCUSSION

A. Legal Framework

Defendants' motions primarily challenge the sufficiency of the evidence as to causation. To succeed on their claims, Plaintiffs must prove general causation and specific causation. Fontenot v. Taser Int'l, Inc., No. 3:10cv125, 2011 U.S. Dist. LEXIS 68761, at *24 (W.D.N.C. June 24, 2011). In a toxic tort case, general causation concerns whether exposure to a substance can cause the disease at issue, and specific causation concerns whether exposure to the substance in fact caused a particular individual's disease. Doe v. Ortho-Clinical Diagnostics, Inc., 440 F. Supp. 2d 465, 471 (M.D.N.C. 2006). The Fourth Circuit has held that "[i]n order to carry the burden of proving a plaintiff's injury was caused by exposure to a specified substance, the plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 263 (4th Cir. 1999) (quotation marks omitted). When, as here, there are multiple defendants, plaintiff must show that he was exposed to the substance as a result of the conduct of each defendant whom plaintiff seeks to hold liable. Agner v. Daniel Int'l Corp., No. 3:98cv220, 2007 U.S. Dist. LEXIS 1509, at *17 (W.D.N.C. Jan. 5, 2007). A defendant's conduct is a proximate cause of plaintiff's injury if it is a substantial factor in bringing about the injury. Ross v. Wash. Mut. Bank, 566 F. Supp. 2d 468, 479 (E.D.N.C. 2008); Agner, 2007 U.S. Dist. LEXIS 1509,

4

at *16; Seraj v. Duberman, 789 S.E.2d 551, 557 (N.C. Ct. App. 2016).

B.   Turtle Wax, Inc's Motion for Summary Judgment

Plaintiffs contend that Mr. Rhyne was exposed to benzene from his use of Marvel Mystery Oil ("MMO"), a product manufactured by Defendant Turtle Wax. Turtle Wax argues that there is insufficient evidence that Mr. Rhyne was exposed to benzene from MMO to create a genuine dispute of material fact.

The evidence is undisputed that Mr. Rhyne used MMO from 1985 through 1998 during his employment with Duke Energy. (Doc. No. 134-2, at 115:5–20, 425:6–426:4, 687:8–24, 702:12–21.) Mr. Rhyne used vibrators to unload ice baskets in the ice condenser building. (Doc. No. 134-2, at 425:6–426:4.) When unloading the baskets, Mr. Rhyne used MMO as a lubricant for the vibrator to keep it from freezing. (Doc. No. 134-2, at 698:20–699:12.) Each vibrator had an oiler, and Mr. Rhyne used a funnel to pour the MMO into the oiler. (Doc. No. 134-2, at 699:21, 709:2–19.)

Plaintiffs rely on the expert testimony of Robert F. Herrick to establish Mr. Rhyne's level of benzene exposure from the various products at issue in this case. Herrick did not determine the quantitative level of Mr. Rhyne's daily or cumulative benzene exposure from his use of MMO. (Doc. No. 148-3, at 39, 43.) Herrick testified that because of the way Mr. Rhyne used MMO, there was not a substantial opportunity for Mr. Rhyne to be exposed to benzene. (Doc. No. 134-3, at 268:12–270:1, 274:9–16.)

Plaintiffs cite to a statement in Herrick's report that the range of Mr. Rhyne's benzene exposure for the duration of each use of MMO was 0.01 to 1 parts per million.

5

(Doc. No. 148-3, at 29.) During his deposition, however, Herrick testified that he should have taken that statement out of his report because he subsequently determined that there was not a substantial opportunity for benzene exposure from MMO due to the way Mr. Rhyne used the product. (Doc. No. 134-3, at 273:12–274:5.) Consistent with this testimony, the tables in Herrick's report setting forth the quantitative levels of Mr. Rhyne's daily and cumulative benzene exposure by product reflect undetermined exposure levels from MMO. (Doc. No. 148-3, at 39, 43.)

Although Plaintiff is correct that an exact quantitative level of exposure is not always necessary to establish causation, Herrick's testimony is not that he was unable to calculate Mr. Rhyne's quantitative level of benzene exposure from MMO, but rather that there was no substantial opportunity for exposure. Plaintiffs have not come forward with sufficient evidence that Mr. Rhyne was exposed to benzene from his use of MMO to create a genuine dispute of material fact. Therefore, the Court grants Turtle Wax's Motion for Summary Judgment.

### C. CRC Industries, Inc.'s Motion for Summary Judgment

Plaintiffs contend that Mr. Rhyne was exposed to benzene from his use of CRC 3-36, a product manufactured by Defendant CRC Industries. CRC Industries argues that there is insufficient evidence that the CRC Industries product used by Mr. Rhyne was CRC 3-36, as opposed to a CRC Industries product that did not contain benzene, to create a genuine dispute of material fact.

The evidence is undisputed that Mr. Rhyne used a CRC Industries product from 1985 through approximately 2000 to clean equipment and tools during his

employment with Duke Energy. (Doc. No. 153-2, at 153:9–155:20.) However, Mr. Rhyne could not recall the particular CRC Industries product that he used, (Doc. No. 136-1, at 445:10–12, 445:21–446:1), and there were many different formulations of CRC Industries products in existence during the period at issue—including products that did not contain any benzene or benzene-containing solvents, (Doc. No. 136-2, at 24:8–14, 71:5–9; Doc. No. 136-13, ¶ 2). The only evidence of record that the CRC Industries product used by Mr. Rhyne was CRC 3-36, as opposed to another CRC Industries product, is that CRC 3-36 is one of two CRC Industries products included on an Approved Chemical List for Duke Energy's McGuire Nuclear Station dated April 1, 1992. (Doc. No. 136-2, at 26:5–13, 58:1–7; Doc. No. 136-3, at PLF005305.)

The inclusion of CRC 3-36 on the April 1992 approved chemical list for the McGuire facility is insufficient evidence that Mr. Rhyne used CRC 3-36 to create a genuine dispute of material fact. Critically, Mr. Rhyne did not work at the McGuire facility in April 1992—at that time, Mr. Rhyne worked at Duke Energy's Catawba facility. (Doc. No. 136-4, Interrog. 6.) Mr. Rhyne worked at the McGuire facility from 1976 through 1983 and then again from January 2015 through May 2015. (Doc. No. 136-4, Interrog. 6.) Further, there is no evidence to suggest that the 900 chemicals on the approved list for the McGuire facility were approved for any other Duke Energy facility. (Doc. No. 136-2, at 62:6–9; Doc. No. 136-3.) There is also no evidence to suggest that all 900 chemicals were present at the McGuire facility or any other facility in April 1992. (Doc. No. 136-2, at 63:7–10; Doc. No. 136-3.) Moreover, there is no evidence as to when CRC 3-36 was first approved for use at the McGuire facility

or for how long it was approved—that is, there is no evidence from which a reasonable jury could conclude that CRC 3-36 was approved for use at the McGuire facility when Mr. Rhyne worked there.

Plaintiffs do not offer any other evidence to support their contention that Mr. Rhyne used CRC 3-36. Plaintiffs' claims against CRC Industries are based on Mr. Rhyne's alleged benzene exposure from his use of CRC 3-36, but Plaintiffs have failed to come forward with sufficient evidence that the CRC Industries product used by Mr. Rhyne was CRC 3-36, as opposed to another CRC Industries product that did not contain benzene. Therefore, the Court grants CRC Industries' Motion for Summary Judgment.

### D. United States Steel Corporation's Motion for Summary Judgment

Plaintiffs contend that Mr. Rhyne was exposed to benzene from raffinate, a chemical byproduct of Defendant United States Steel Corporation's ("USS") coking operations that was captured and sold. (Doc. No. 140-3, ¶¶ 4–5.) USS's raffinate contained a minimum of 5% benzene. (Doc. No. 140-2, ¶ 6.) USS sold raffinate to non-party Radiator Specialty Company ("Radiator") from 1960 through 1978 in bulk sales. (Doc. No. 140-3, ¶ 6; Doc. No. 140-7, at 149:13–15.) In turn, Radiator designed, manufactured, labeled, and sold a product called Liquid Wrench. (Doc. No. 140-3, ¶ 7.) From the 1950s through April 1978, Radiator manufactured and sold at least two formulations of Liquid Wrench. (Doc. No. 140-2, ¶ 4.) One Liquid Wrench formula used raffinate, while the other formula did not. (Doc. No. 140-2, ¶¶ 6–7.) Mr. Rhyne used Liquid Wrench from approximately 1970 through 1985 in his high

8

school mechanic class, performing work on his car at home, and in his employment with Duke Energy. (Doc. No. 152-1, at 19:5–21:4, 223:5–14, 225:20–228:18, 260:6–24, 303:12–304:17.)

USS does not dispute that the Liquid Wrench product used by Mr. Rhyne was the benzene-containing raffinated Liquid Wrench. USS contends that it is entitled to summary judgment because Plaintiffs' claims are preempted by the Federal Hazardous Substances Act ("FHSA"). Alternatively, USS contends that Plaintiffs' claim for breach of the implied warranty of merchantability fails as a matter of law. The Court addresses each in turn.

1. <u>FHSA Preemption</u>

The FHSA was enacted in 1960 to "provide nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use." <u>Moss v. Parks Corp.</u>, 985 F.2d 736, 739 (4th Cir. 1993) (quoting House Comm. on Interstate and Foreign Commerce, Federal Hazardous Substances Labeling Act, H.R. Rep. No. 1861, 86th Cong., 2d Sess. 2 (1960), <u>reprinted in</u> 1960 U.S.C.C.A.N. 2833, 2833). In order to fall within the scope of the FHSA, the substance must be intended or suitable for use in the household or by children. <u>See</u> <u>Mwesigwa v. DAP, Inc.</u>, 637 F.3d 884, 887 (8th Cir. 2011); 15 U.S.C. § 1261(p). Liquid Wrench is a hazardous substance within the scope of the FHSA because it is intended for household use and contains 5% or more by weight of benzene. 16 C.F.R. § 1500.14(a)(3); <u>see also</u> <u>Drake v. Radiator Specialty Co.</u>, No. 1:03-cv-1349, 2004 WL 7330872, at *2 (E.D. Tex. Nov. 10,

9

2004). When a substance is subject to the FHSA, the FHSA preempts state common law tort actions against the manufacturer that seek to impose additional or different labeling requirements than those required by the FHSA. Moss, 985 F.2d at 740–41. The FHSA does not, however, preempt state common law tort actions against a manufacturer for noncompliance with the labeling requirements of the FHSA. Id.

Here, Plaintiffs' claims against USS are based on the raffinate chemical USS sold in bulk to Radiator and used in Radiator's manufacture of Liquid Wrench, not the Liquid Wrench product itself. Although Liquid Wrench is subject to the FHSA, the raffinate contained in Liquid Wrench is not a substance intended for household use and, thus, is not subject to the FHSA. Drake, 2004 WL 7330872, at *1 (concluding that the FHSA preempted plaintiff's state law claims against Radiator based on the labeling of Liquid Wrench but not plaintiff's state law claims against USS based on the labeling of raffinate); see also Hunnings v. Texaco, 29 F.3d 1480, 1488 (11th Cir. 1994) ("[T]he [FHSA] regulate[s] the retail distribution of hazardous substances and, therefore, ha[s] no application to the bulk transfers at issue here."). Accordingly, the FHSA does not preempt Plaintiffs' claims against USS.

2. Breach of Implied Warranty of Merchantability

USS contends that Plaintiffs' claim for breach of the implied warranty of merchantability fails as a matter of law because (1) USS had no contact with Mr. Rhyne or his employer and thus could not have given an implied warranty, and (2) the statute of limitations bars the claim.

10

That USS had no contact with Mr. Rhyne or his employer has no bearing on the existence of an implied warranty of merchantability. Under North Carolina law, goods are subject to an implied warranty of merchantability if the seller is a merchant with respect to goods of that kind. Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc., No. 5:06-cv-160-D, 2011 U.S. Dist. LEXIS 34789, at *19 (E.D.N.C. Mar. 31, 2011). A "merchant" is "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." N.C. Gen. Stat. § 25-2-104(1). There is sufficient evidence that USS was a merchant with respect to the raffinate it regularly sold in bulk to Radiator such that raffinate was subject to an implied warranty of merchantability. Under North Carolina's products liability statute, a buyer may bring a product liability action directly against the manufacturer for breach of implied warranty and "the lack of privity of contract shall not be grounds for the dismissal of such action." Id. § 99B-2(b). A "manufacturer" is defined to include a component part manufacturer such as USS. Id. § 99B-1(2). Thus, USS's first argument fails.

USS also argues that the three-year statute of limitations for breach of contract claims applies to Plaintiffs' warranty claim and that the claim accrued on the date of breach. USS contends that because it last sold raffinate to Radiator in 1978, the latest that Plaintiffs could have brought a warranty claim was 1981. This is incorrect.

Because Plaintiffs' warranty claim seeks to recover damages for personal injury, specifically disease, the claim is governed by the three-year limitations period

11

for personal injury claims. Hanover Ins. Co. v. Amana Refrigeration, Inc., 415 S.E.2d 99, 101 (N.C. Ct. App. 1992). Applying North Carolina law, the Fourth Circuit has held that a claim for damages arising out of disease is timely as long as it is brought within three years of diagnosis. Guy v. E. I. Du Pont de Nemours & Co., 792 F.2d 457, 460 (4th Cir. 1986); Hyer v. Pittsburgh Corning Corp., 790 F.2d 30, 34 (4th Cir. 1986); see also Gardner v. Asbestos Corp., 634 F. Supp. 609, 612 (W.D.N.C. 1986).

Mr. Rhyne was diagnosed with AML in May 2015. Plaintiffs initiated this action in April 2018. Therefore, Plaintiffs' warranty claim arising out of disease was filed within three years of Mr. Rhyne's diagnosis and, as such, is not barred by the statute of limitations. The Court denies USS's Motion for Summary Judgment.

### E. Sunoco (R&M), LLC's Motion for Summary Judgment

Plaintiffs contend that Mr. Rhyne was exposed to benzene from benzene-containing mineral spirits Defendant Sunoco supplied to Defendant Safety-Kleen Systems, Inc., a benzene/acetone mixture Sunoco supplied to Defendant The Savogran Company, and the raffinate byproduct used in Liquid Wrench. Sunoco argues that there is insufficient evidence that Mr. Rhyne was exposed to a product or substance for which Sunoco is responsible to create a genuine dispute of material fact.

#### 1. Benzene-Containing Mineral Spirits Sunoco Supplied to Safety Kleen

Plaintiffs contend that Sunoco supplied benzene-containing mineral spirits to Safety Kleen that Safety Kleen used in its manufacture of parts washing solvent. Plaintiffs contend that Mr. Rhyne was exposed to Sunoco's benzene-containing mineral spirits from using Safety Kleen's parts washing solvent and that such

12

exposure was a proximate cause of his AML.  Sunoco argues that there is insufficient evidence that Sunoco's mineral spirits, as opposed to mineral spirits supplied by another company, were components of the Safety Kleen parts washing solvent used by Mr. Rhyne.

Plaintiffs' evidence shows that Sunoco was one of many suppliers of benzene-containing mineral spirits used by Safety Kleen for its manufacture of parts washing solvent.  A memorandum dated December 26, 1991 identifies Sunoco as one of five mineral spirits suppliers used by Safety Kleen, (Doc. No. 147-7), and a memorandum dated April 14, 1992 identifies Sunoco as one of eight mineral spirits suppliers used by Safety Kleen, (Doc. No. 147-8).  In a toxic tort case, it is axiomatic that plaintiff must establish that he was exposed to a toxic substance for which defendant is responsible to prove defendant's conduct was a proximate cause of plaintiff's injury.  Agner, 2007 U.S. Dist. LEXIS 1509, at *17 (granting summary judgment in favor of defendant where plaintiffs failed to present evidence of exposure to asbestos as a result of defendant's conduct).  Plaintiffs have not come forward with any evidence, however, that the Safety Kleen parts washing solvent used by Mr. Rhyne contained mineral spirits manufactured or supplied by Sunoco, as opposed to another supplier.  Thus, Plaintiffs have failed to come forward with sufficient evidence that Mr. Rhyne was exposed to benzene-containing mineral spirits for which Sunoco is responsible from his use of Safety Kleen's parts washing solvent to create a genuine dispute of material fact.

2. <u>Benzene/Acetone Mixture Sunoco Supplied to Savogran</u>

Plaintiffs contend that Sunoco supplied a benzene/acetone mixture to Savogran that Savogran used in its manufacture of Kutzit. Plaintiffs contend that Mr. Rhyne was exposed to Sunoco's benzene/acetone mixture from using Savogran's Kutzit and that such exposure was a proximate cause of his AML. Sunoco argues that there is insufficient evidence that Mr. Rhyne was exposed to a Sunoco product or substance from using Savogran's Kutzit.

In their response brief in opposition to Sunoco's motion, Plaintiffs argue that they have presented evidence that Sunoco supplied Savogran "with a 90% benzene 10% acetone mixture in 1973 that Savogran used as the main ingredient incorporated into their Kutzit product." (Doc. No. 147, at 5.) The evidence Plaintiffs refer to is a one-page document that is barely legible. (Doc. No. 147-10.) At best, the document is evidence that on one occasion in 1973, Sunoco supplied Savogran with a benzene/acetone mixture. But Plaintiffs have not come forward with any evidence that Savogran used such mixture as the main ingredient in Kutzit. Further, the document appears to list multiple other purchases of the mixture from other vendors, and Plaintiffs have not come forward with any evidence that the Kutzit used by Mr. Rhyne contained the Sunoco-supplied mixture. As such, Plaintiffs have failed to come forward with sufficient evidence that Mr. Rhyne was exposed to a benzene-containing product or substance for which Sunoco is responsible from his use of Savogran's Kutzit to create a genuine dispute of material fact.

3. <u>Raffinate Byproduct in Liquid Wrench</u>

In their Complaint, Plaintiffs allege upon information and belief that Sunoco assumed certain liabilities for Liquid Wrench and the raffinate ingredient thereof through its acquisition of Aristech Chemical Company. Plaintiffs repeat this statement in their response brief in opposition to Sunoco's motion. Plaintiffs do not, however, offer any evidence to support this successor liability theory.

In sum, Plaintiffs have not come forward with any evidence that Mr. Rhyne was exposed to a benzene-containing product or substance for which Sunoco is responsible to create a genuine dispute of material fact. Therefore, the Court grants Sunoco's Motion for Summary Judgment.

IV. **CONCLUSION**

**IT IS THEREFORE ORDERED** that:

1. Turtle Wax, Inc.'s Motion for Summary Judgment, (Doc. No. 133), is **GRANTED** and Plaintiffs' claims as to Turtle Wax, Inc. are **DISMISSED**;

2. CRC Industries, Inc.'s Motion for Summary Judgment, (Doc. No. 135), is **GRANTED** and Plaintiffs' claims as to CRC Industries, Inc. are **DISMISSED**;

3. United States Steel Corporation's Motion for Summary Judgment, (Doc. No. 139), is **DENIED** and Plaintiffs' claims as to United States Steel Corporation shall proceed to trial;

4. Sunoco (R&M), LLC's Motion for Summary Judgment, (Doc. No. 127), is **GRANTED** and Plaintiffs' claims as to Sunoco (R&M), LLC are **DISMISSED**; and

5. The parties shall file any <u>Daubert</u> motions **within fourteen (14) days** of the date of this Order. Responses to <u>Daubert</u> motions, if any, shall be filed **within fourteen (14) days** of the date on which the motion is filed. Replies to responses, if any, shall be filed **within seven (7) days** of the date on which the response is filed.

Signed: March 24, 2020

Robert J. Conrad, Jr.
United States District Judge