UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| BRUCE RHYNE and JANICE RHYNE,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES STEEL CORPORATION, et al.,<br><br>Defendants. | Civil Action No.: 3:18-cv-00197 |

**THE SAVOGRAN COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY, OPINIONS AND REPORT OF PLAINTIFFS' EXPERT DR. ROBERT HERRICK AND MOTION TO STRIKE THE DECLARATION OF DR. HERRICK**

Defendant THE SAVOGRAN COMPANY ("Savogran") respectfully files this reply in support of its Motion to Exclude the Testimony, Opinions and Report of Plaintiffs' Expert Dr. Robert Herrick (the "Motion"). In addition, Savogran respectfully moves for an order striking the Declaration of Dr. Herrick attached as Exhibit 1 to Plaintiffs' response. To the extent consistent herewith, Savogran joins in and adopts those arguments of Safety Kleen, Inc. and U. S. Steel, Inc. made in their own replies in support of their separate and joint motion to exclude Dr. Herrick (the "Joint Motion to Exclude").

## INTRODUCTION

Plaintiffs have disclosed and designated Dr. Robert F. Herrick as a testifying expert witness on the topic of Plaintiff Bruce Rhyne's ("Plaintiff's") alleged exposure to benzene.[1] Savogran

---

[1] Reference to Plaintiff in the singular refers to Plaintiff Bruce Rhyne, whose alleged exposure to benzene is the primary basis for all of Plaintiffs' claims. Plaintiff Janice Rhyne's loss of consortium claims are derivative.

1

filed the Motion seeking to exclude testimony, opinions, and the report of Dr. Herrick because his exposure opinions were based on speculation and insufficient data, were not the product of reliable methods, and because he did not reasonably apply those methods in this case. In response to the Motion, Plaintiffs attached a brand new, 22-page "Declaration" of Dr. Herrick (the "Declaration", Doc. 214-1) proffering new opinions and detailing new facts upon which Dr. Herrick claims to have relied in drafting his report, despite no citation to the same in his report. The Declaration should be stricken because it constitutes an untimely supplemental expert opinion in violation of the Rules. Thus, standing on the opinions and facts relied upon contained in his report and testified to at his deposition, Dr. Herrick's opinion, testimony and report should be excluded.

## **BACKGROUND AND SUMMARY OF ARGUMENT**

At the outset, Savogran moves to strike the Declaration of Dr. Herrick (Doc. 214). Plaintiffs' expert deadline has long passed, Dr. Herrick has already been deposed, and this case is set for trial. Plaintiffs' attempt to supplement Dr. Herrick's report to cure the deficiencies identified by Savogran in the Motion should not be tolerated at this late stage of litigation.

As to Plaintiff's home use of Savogran's product Kutzit, Plaintiff claims in the response that Dr. Herrick relied on the report and interview of Plaintiff done by Plaintiffs' former expert Stephen Petty, CIH. However, Dr. Herrick did not mention Mr. Petty's report or interview of Plaintiff at all in the body of his report as information he relied upon in forming his opinions. Instead, Dr. Herrick cited only to the deposition testimony of Plaintiff as the specific factual support for his opinions. (Doc. 204-2 at 4.) When questioned at deposition about his basis for concluding that Plaintiff used Kutzit one day in every three days that he worked on cars at home, Dr. Herrick identified only Plaintiff's deposition (which has no testimony that Plaintiff used Kutzit one day for every three days that he worked on cars), and Dr. Herrick's estimate "as a reasonable frequency for the kinds of work that he described doing on the cars." (Exhibit "L", Dr. Herrick

Depo. Tr. at 347:7-349:16.) Thus, in estimating Plaintiff's exposure from using Kutzit to remove gaskets while working on family cars, Dr. Herrick's assumption that Plaintiff used Kutzit one third of the times has no evidentiary support.

Similarly, as to Plaintiff's use of Kutzit at Setzer's, while Plaintiff now claims Dr. Herrick relied on Mr. Petty's report and interview of Plaintiff to determine the frequency of Plaintiff's use of Kutzit, there is no mention of such reliance in the body of Dr. Herrick's report. Thus, Dr. Herrick's assumption as to the frequency of Plaintiff's use of Kutzit at Setzer's has no evidentiary support. Further, as to Dr. Herrick's assumption that Plaintiff used the pre-2/28/1974 formula through the end of 1974, Plaintiffs offer no facts to support this assumption and instead argue the burden of proof should be on Savogran to show that the pre-2/28/1974 formula was not used through the end of 1974. Plaintiff is wrong. The burden of proof lies with Plaintiff to show Dr. Herrick's opinions are not based on speculation.

As to Plaintiff's use of Kutzit at Duke Power, Plaintiff now claims that Dr. Herrick relied on Mr. Petty's interview of Plaintiff in which he gave a different timeline of use of Kutzit during his time at Duke Power than he did in his deposition testimony. However, again, relying upon what was explicitly relied up by Dr. Herrick as stated in his report (Plaintiff's deposition testimony), Dr. Herrick's assumption that Plaintiff used Kutzit at Duke Power through 1998 is without evidentiary support.

Plaintiff has similarly failed to cure the multiple fatal defects in Dr. Herrick's methodology, and Plaintiffs' attempt to shift the burden of proof to Savogran should not be countenanced by the Court.

Thus, as stated in the Motion, Dr. Herrick's opinions do not comply with the standards imposed by Federal Rule of Evidence 702 and *Daubert* and are subject to exclusion by this Court.

# LEGAL STANDARD[2]

Federal Rule of Civil Procedure 26(a)(2)(B)(i) provides that an expert's report must contain "all opinions the witness will express." Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 26(e), FRCP, requires expert opinions to be supplemented when a party learns the information disclosed is incomplete or incorrect, but is **not** designed or intended to permit unlimited bolstering of expert opinions. *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or was harmless." Fed. R. Civ. P. 37(c)(1). In determining whether nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion, the district courts are to weight the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

While Rule 26 requires a party to supplement its experts' reports and deposition testimony when the party learns of new information, "Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report." *Southern v. Bishoff*, 675 F. App'x 239, 249 (4th Cir. 2017) (quoting *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008)). Where expert "declarations are attempts to bolster the original expert reports and testimony in response to arguments raised in defendants' *Daubert* motions," the new opinions should be stricken as

---

[2] Savogran incorporates by reference all legal authority cited in the Motion as if restated herein verbatim.

untimely supplemental expert reports. *Lightfoot v. Georgia-Pacific Wood Prods., LLC*, No. 7:16-CV-244-FL, 2018 U.S. Dist. LEXIS 160806, at *17-18 (E.D.N.C. Sept. 20, 2018).

Further, such improper supplemental expert reports are not justified or harmless and warrant being struck. *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 U.S. Dist. LEXIS 72102, at *26-28 (S.D. Fla. June 2, 2016) (striking plaintiff's untimely supplemental expert report as merely a response to defendant's *Daubert* motion and improperly extending the opposition beyond the four corners of the document). Points that could have been made in the expert's initial report are not permitted by Rule 26(e) to be made in a supplemental report. *See Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741-43 (7th Cir. 1998) (affirming exclusion of "supplemental" expert testimony based on untimely disclosure because opinions were based on information available prior to the deadline for close of discovery); *see also Jones Creek Investors, LLC v. Columbia Cnty.*, 98 F. Supp. 3d 1279, 1289 (S.D. Ga. 2015).

## ARGUMENT

### I. DR. HERRICK'S DECLARATION SHOULD BE STRICKEN

Dr. Herrick's report was produced on September 17, 2019. This case is set for trial on July 6, 2020. Plaintiff is now attempting, at the eleventh hour, to have Dr. Herrick issue new opinions and provide new foundational facts Dr. Herrick supposedly relied on, though did not mention in his report or at his deposition, in response to deficiencies outlined by Savogran and other defendants in the Joint Motions to Exclude. This type of gamesmanship is in contravention of the Rules, and, accordingly, these new opinions and factual bases should be stricken and not considered by this Court as support for Plaintiffs' arguments in opposition to the Motion. *See* Fed. R. Civ. P. 37(c)(1); *Bishoff*, 675 F. App'x at 249. While Rule 26(e) "requires supplementation when a 'party learns that in some material respect the information disclosed is incomplete or incorrect' . . . . The Court cannot accept a definition of supplementation which would essentially allow for unlimited bolstering of expert opinions." *Akeva L.L.C.*, 212 F.R.D. at 310 (quoting Rule

26(e)(1)). Rule 26(e) is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy. *Cochran v. Brinkmann Corp.*, No. 1:08-CV-1790-WSD, 2009 U.S. Dist. LEXIS 114895, at *14-15 (N.D. Ga. Dec. 9, 2009), *aff'd sub nom. Cochran v. The Brinkmann Corp.*, 381 F. App'x 968 (11th Cir. 2010).

An expert declaration submitted in response to a *Daubert* motion is not justified or harmless, as the moving party has already relied on the expert's report and deposition in drafting their motions. *Companhia Energetica Potiguar.* 2016 U.S. Dist. LEXIS 72102, at *23 ("Next, it is difficult to discern a logical basis to conclude that the untimely declaration is not harmless. To the contrary, it was filed after the close of discovery, after CAT filed its summary judgment motion, and after CAT filed its Daubert motion."); *see also Innis Arden Golf Club v. Pitney Bowes, Inc.*, No. 3:06-CV-1352, 2009 U.S. Dist. LEXIS 125609, at *21 (D. Conn. Feb. 23, 2009) (finding "untimely self-serving [expert opinion] supplementation . . . neither substantially justified nor harmless"); *Lightfoot*, 2018 U.S. Dist. LEXIS 160806, at *19 ("[t]he critical issue for purposes of the instant motion to strike, instead, is that the declarations are made in response to defendants' *Daubert* motions and are not made either timely or for a stated purpose of correcting inadvertent errors or omissions in the original reports or depositions.").

As to Savogran's Motion specifically, Dr. Herrick did not mention Mr. Petty's report or Mr. Petty's interview of Plaintiff as a basis for any of his opinions in the body of his report. (See Doc. 204-2) When questioned at his November 6, 2019 deposition regarding Mr. Petty's report, Dr. Herrick stated that he used Mr. Petty's report to "look at the way he had organized the information and the way he described Rhyne's work history and – and the way he had calculated his exposures," but that he "had a little trouble following [Mr. Petty's] report," and the he had "a little problem, you know, fully understanding the methodology." (Doc. 204-1 at 28:25-30:1; 74:7-18.) However, now, in response to Savogran's Motion, Dr. Herrick is attempting to offer new

opinions regarding his reliance on Mr. Petty's report and calculations that Dr. Herrick now, apparently, understands very well, despite not having cited to it as information he was relying on in his report.

This case is set for trial and the parties are in the middle of pre-trial briefing. Thus, Savogran is surprised by these new opinions and factual bases, and is prejudiced by having had no opportunity to depose Dr. Herrick regarding them. Thus, to allow Dr. Herrick to testify as to these new opinions and factual bases would disrupt the trial and may result in additional motions and corresponding briefing. Moreover, Defendants filed *Daubert* motions in reliance on Dr. Herrick's report and depositions. *Lightfoot*, 2018 U.S. Dist. LEXIS 160806, at *22-23 (finding defendants severely hampered in curing the surprise because expert discovery closed and defendants filed their *Daubert* motions in reliance on plaintiffs' experts' original reports and depositions). The ability to simply cross-examine an expert at trial is not a cure. *S. States Rack And Fixture, Inc.*, 318 F.3d at 598. Plaintiff has failed to explain the reason for such a delayed supplementation of new opinions and factual bases. The only possible explanation is that Plaintiff saw the weaknesses and vulnerabilities in Dr. Herrick's original report as a result of the Motion and is now, improperly, attempting to rehabilitate him.

Plaintiffs' attempt to bolster Dr. Herrick's opinions by producing this new Declaration should be stricken as an untimely supplementation, and this Court should not consider it or Plaintiffs' discussion of it in ruling on the Motion.

## II. DR. HERRICK'S EXPOSURE ASSESSMENT IS UNRELIABLE

If this Court strikes Dr. Herrick's Declaration and any discussion of the information therein, as it should, Plaintiffs' response does little to substantively address the arguments raised by Savogran as to why testimony, opinions, and the report of Dr. Herrick should be excluded. Dr. Herrick's assessment of Plaintiff's alleged benzene exposures from Kutzit is inherently unreliable

because Dr. Herrick's assumptions and conclusions pronounced in his report and testified to at his deposition are wholly speculative and are not based on any objective evidence.

      A.      **Dr. Herrick's Opinion as Expressed in His Report and in His Deposition Regarding Plaintiff's Exposure to Benzene From Use of Kutzit at Home is Based on Speculation.**

Plaintiff contends that Dr. Herrick's estimate that Mr. Rhyne used Kutzit one-third of the times he worked on family cars was conservative. (Doc. 214 at 2-3.) However, in sole support for this contention, Plaintiff states that because the Joint Motion to Exclude states that Dr. Herrick had access to Mr. Petty's report, Dr. Herrick must have relied upon it. (*Id.*) As explained above, the information gleaned from Mr. Petty's interview of Plaintiff, including that Plaintiff used Kutzit on average twice per month when working on cars at home, is not cited in Dr. Herrick's report as support for Dr. Herrick's opinions. Plaintiffs' new calculations and additional assumptions as to Plaintiff's frequency of use at Kutzit at home, solely based on information from Mr. Petty's report and interview of Plaintiff, should not be considered by the Court. Plaintiffs' assertion that Dr. Herrick's opinion was a "conservative underestimate" are belied by the assumptions upon assumptions that were needed to make that statement.

Dr. Herrick's report reflects that he relied solely on Plaintiff's deposition testimony for the facts surrounding Plaintiff's frequency of use of Kutzit on cars at home. (Doc. 204-2 at 3-4, including footnotes.) There is no deposition testimony from Plaintiff wherein he identifies how frequently he used Kutzit at home. In addition to the phantom Plaintiff's deposition testimony concerning frequency of use, during his deposition, Dr. Herrick repeatedly replied that he estimated the frequency of use.

/ / /

/ / /

/ / /

8

Savogran questioned Dr. Herrick in deposition as to the critically important point regarding frequency of use and the factual basis. In response, Dr. Herrick testified as follows:

> **Q.** I have some questions for you regarding the statements in the report regarding the outdoor work with the father.
> **A.** Okay.
> **Q.** You state on page 31 of your report that you conservatively estimated that Mr. Rhyne you put that one-third of the time he worked on the family cars. Do you that?
> **A.** Yeah. I'm looking right now, yeah.
> **Q.** How did you come up with that one-third time number?
> **A.** I'm trying to remember . He was asked about, you know, the overall work process and how many times – you know, he worked on the car with his father once a month about six or seven hours each time – I'm just looking at the notes here – how he used the Kutzit it. And I estimated that – and I think this was a result of – of the responses that he gave to the questions, that he didn't use Kutzit every time. He didn't always remove the gaskets. And so that – I think he – he may have used that figure of one-third. I don't remember the exact language in the deposition, but that was what I used to recognize that he didn't always use Kutzit.
> **Q.** If he did not say that he used Kutzit one-third of the time, would you admit that this is speculation?
> MR. DUPONT: Objection. Form.
> **A.** Well, I haven't looked at his, you know, deposition, but, you know, this would be my estimate, you know, which I would – you know, which I used for the calculation. I don't remember if he was specifically asked about this or not.
> **Q.** So if he wasn't specifically asked about it, how did you come up with the one-third estimation?
> **A.** Well, that – that was my value that I estimated as – as a reasonable frequency for the kinds of work that he described doing on these cars.
> **Q.** But how did you arrive at that information?
> MR. DUPONT: Just asked and answered.
> **Q.** You can answer, Doctor.
> **A.** Yeah, I mean he –
> MR. DUPONT: He did answer it.
> **A.** He – he – well, if you take a look at the kind of work that he was doing where he wound up removing gaskets, he was, you know, taking off the valve covers, he was taking off the oil pan gaskets. So he clearly didn't do that every time that he worked on the car, but I thought it was a reasonable estimate to say, well, those were kinds of tasks that he would have done about a third of the time.

(Exhibit "L", Dr. Herrick Depo. Tr. at 347:7-349:16.)

In sum, in his report and in deposition, Dr. Herrick identified only two sources for his conclusion that Plaintiff used Kutzit one day for every three days that he worked on cars at home: 1) Plaintiff's deposition (which had no such testimony), and 2) Dr. Herrick's estimate "as a

reasonable frequency for the kinds of work that he described doing on the cars." *Id.* Thus, in calculating Plaintiff's estimated exposure to benzene from using Kutzit to remove gaskets while working on family cars, Dr. Herrick's assumption that Plaintiff used Kutzit one third of the times is speculation and his exposure estimate is, therefore, baseless.

> **B.** **Dr. Herrick's Opinion as Expressed in His Report and at His Deposition Regarding Plaintiff's Exposure to Benzene From Use of Kutzit at Setzer's is Based on Speculation.**

Plaintiff argues that because he gave Mr. Petty additional information as to his use of Kutzit at Setzer's, which was not included in Dr. Herrick's report for his assumption that Plaintiff used Kutzit one hour per day, one day per week in 1974-75, additional "logical inferences" should now be made to support Dr. Herrick's opinion. (Doc. 214 at 4-8.) Again, these new inferences and calculations should not be considered as they were not relied upon by Dr. Herrick at the time he issued his report, evidenced by the lack of citation to the same.

Plaintiff's use of Kutzit at Setzer's was to remove gaskets on cars. Dr. Herrick's report reflects that he relied solely on Plaintiff's deposition testimony as to frequency of this work at Setzer's. Contrary to Plaintiffs' argument, Plaintiff did not testify regarding any overall estimated amount of time he used Kutzit per week, per month, or any other time period. Plaintiff cites to Plaintiff's deposition testimony in an effort to support the argument that Plaintiff did testify regarding how frequently he removed gaskets at Setzer's (and therefore used Kutzit), but Plaintiff failed to include the entire pertinent deposition testimony:

> **Q.** Okay. Can you estimate – you testified earlier today that you were in this class during your junior and senior years. **Can you estimate for me how often you personally removed a gasket in class during your junior year?**
> **A.** I – I can't remember. It would be a guess if I told you anything.
> **Q.** And I don't want you to guess. **How about your senior year, do you have any recollection of how many you may have personally removed during class time in your senior year?**
> MR. DUPONT: Objection, vague.
> **A.** No, ma'am.
> BY MS. BUSCH:

10

**Q.** Okay. What percentage of time, when you removed gaskets during class, did you actually have to use Kutzit?
**A.** Well, every – every time that we took gaskets off, we used it. So any time we was working on gaskets, we would have used a Kutzit to use that. We had it available. And it wasn't – didn't make any sense not using something that helped us get the gasket off.
**Q.** Do you recall ever getting Kutzit on your skin when you used it during class?
**A.** I don't recall getting any kind of burning sensation from using it. But the way we had to take the stuff off and use Scotch Brite pads, we would have got some of the chemical on our hand. Even though we had a pair of gloves on, it might be above the glove, in a watch area.
**Q.** Okay. Do you know if you were able to use a rag to wipe that off while you were actually doing your work?
MR. DUPONT: Objection, vague.
**A.** We had rags with us, yes.
BY MS. BUSCH:
**Q.** Okay. I want to ask you some questions about Setzer because you testified just today about using Kutzit at that facility as well. During the school year, what percentage of time did you spend removing gaskets at Setzer versus doing other kinds of work, cleaning parts and whatever else you did with the mechanics?
**A.** We had about a three or four hour class – or time that we worked up there with the mechanic. And the majority of that time was cleaning gaskets and parts using the parts washer. So if you're looking at percentage time, in a four hour day, three hours of that – two and a half, three hours of that would have been working on gaskets or either cleaning bolting.
**Q.** Okay. So would you be removing gaskets every – every day that you went to Setzer's?
**A.** I didn't go every day.
**Q.** No. No. Every time that you did go, the one time a week that you would go during the school year, would you be removing gaskets every one of those times?
**A.** It may not be the same kind of gaskets, but it would be gaskets or parts or bolting, or just any kind of part that fit into the – the sink of the Safety-Kleen. The gaskets, if I go up there one week and I might have a full day of them gaskets. The next week I went up there, it'd be cleaning bolting or carburetors or stuff like that.
**Q.** Okay. When you would remove gaskets at Setzer, how much of that time would you use Kutzit?
MR. DUPONT: Objection, vague.
**A.** Probably an hour.

(Exhibit "M", Bruce Rhyne Depo. Tr. at 658:17-662:3.) Emphasis added.

Plaintiff's testimony could not be more clear that he could not remember how often he removed gaskets (and thus used Kutzit) at Setzer's in his junior or in his senior years. Thus, even if Dr. Herrick is permitted to now expand the facts upon which he relies for his opinions, by

including the interview by Mr. Petty, Dr. Herrick's opinion regarding estimated exposures at Setzer's must fall because the assumptions regarding frequency of use are directly contrary to Plaintiff's deposition testimony.

Plaintiff also fails to address Savogran's second argument as to Dr. Herrick's opinion concerning exposure at Setzer's; i.e., Dr. Herrick assumed without evidence that Savogran's pre-2/28/1974 formula was used by Plaintiff through the end of 1974. Plaintiff attempts to shift the burden to Savogran to prove that it stopped manufacturing Kutzit with benzene as an ingredient in February 1974, which is simply improper. As this Court, and Plaintiff, are well aware, it is Plaintiffs' burden alone to identify the cause of Plaintiff's AML. *See Starnes v. Taylor*, 272 N.C. 386, 391 (N.C. 1968) (holding "to establish liability . . . there must be proof of [action] . . . by the defendant, which was the proximate cause of the plaintiff's injury . . ."). The burden of proof is on Plaintiff to produce reliable expert testimony regarding causation. *See Owens v. Bourns, Inc.*, 766 F.2d 145, 149-50 (4th Cir. 1985). It is not Savogran's burden to disprove facts or otherwise to aid Plaintiffs' experts in attempting to arrive at a reliable opinion. Plaintiffs' new theories in the response, without any citation to authority, as to the formula of Kutzit that may or may not have reached Plaintiff (Doc. 214 at 9-10) are pure speculation and fall far short of "circumstantial evidence" that should be considered as support for Dr. Herrick's opinions.

Dr. Herrick's calculation of exposure at Setzer's is therefore based on speculation and is exaggerated and, therefore, unreliable.

C. **Dr. Herrick's Opinion Regarding Plaintiff's Exposure to Benzene From Use of Kutzit at Duke Power is Based on Speculation.**

Plaintiff argues in the response that Plaintiff's deposition testimony supports Dr. Herrick's conclusion that Plaintiff used Kutzit to clean and remove gaskets at Duke Power starting in 1985 through 1998. (Doc. 214 at 10.) However, Plaintiff cites to deposition testimony supporting Savogran's argument that Dr. Herrick's conclusion is unsupported by evidence because Plaintiff

testified he stopped using Kutzit before 1998. (Doc. 214 at 10, citing Doc. 214-2, Plaintiff's Dep. Tr. at 665:10-24, "Q: What did you use Kutzit for –; A: It would have been **before** '98.") (emphasis added.) Dr. Herrick should not have measured Plaintiff's exposure to Kutzit going through 1998 as Plaintiff's testimony that he stopped using Kutzit "before" 1998 is indefinite and certainly doesn't mean "up until" 1998. The fact that Mr. Petty's report states Plaintiff told him he used Kutzit "to 1998," does nothing to support Dr. Herrick's opinion, even if it were to be considered. (Doc. 214 at 11-12.)

Additionally, as discussed, Plaintiffs extrapolation of information from Mr. Petty's report regarding Plaintiff's use of Kutzit while at Duke Power was not information relied upon by Dr. Herrick in his report and should not be taken into consideration here.

Dr. Herrick assumption of facts directly contrary to Plaintiff's testimony, which is all that Dr. Herrick relied on in his report, and that resulted in a lengthier exposure period produced an unreliable and exaggerated exposure estimate.

### III. DR. HERRICK FAILS TO USE RELIABLE METHODOLOGY

#### A. Dr. Herrick's Method for Calculating Exposures Based on the Young Study is Not Reliable.

Plaintiff contends that Dr. Herrick's assertion that the Young Study[3] used a "Kutzit formula," is correct because the study used a "liquid paint remover product, which contained 52% benzene as an ingredient," and "the Kutzit product's formula pre-2/28/1974 contained 53-56% benzene." (Doc. 214 at 13.) However, contrary to Plaintiffs' assertion that the pre-2/28/1974 formula of Kutzit is "highly relevant," Plaintiff is unable to explain how the Young Study mimicked any exposure of Plaintiff.

---

[3] Young R.I., Rinsky RA, and Infante PF. 1978. Benzene in Consumer Products. *Science,* 199:248-248. (See Exhibit "E" to the Motion.)

Specifically, Plaintiff asserts that "Dr. Herrick relied upon his 5 decades experience as an industrial hygienist to make the professional judgment that Mr. Rhyne's near field exposures at Setzer's mechanic shop were sufficiently similar to the exposures measured by Young," yet does not explain how that can possibly be the case as the Young Study was conducted in a two car garage measuring approximately 8 feet x 21 feet x 20 feet and Dr. Herrick did not take into account the size of Plaintiff's work area at Setzer's. Additionally, Plaintiff's copying and pasting of large sections of the Declaration into the response, showing how extensive these new opinions are, does little to support any possible argument by Plaintiff that these should not have been disclosed earlier as they allegedly further discuss information he had at the time of drafting his report.

Plaintiffs' assertion that Dr. Herrick did not rely upon the Young Study in calculating Plaintiff's at-home exposures to Kutzit is not responsive to any argument made by Savogran in the Motion and should be ignored.

As to Dr. Herrick's methodology for calculating Plaintiff's exposure at Duke Power, Plaintiff again relies upon new opinions in Dr. Herrick's Declaration, and for the first time, explains how he used a "generally acceptable" method that was incorporated into the EPA's methods for estimating chemical emissions. Plaintiffs' attempt to rely upon new opinions to strengthen Dr. Herrick's fatally defective methodology in his report should be disregarded. Similarly, Plaintiffs' assertion that Savogran can just cross-examine Dr. Herrick if it disagrees with these new opinions misses the mark insofar as Plaintiffs' violation of the Rules has deprived Savogran of the opportunity to depose Dr. Herrick before trial and have its own experts evaluate and respond to Dr. Herrick's new opinions, the penalty for which is exclusion.

    **B.**    <u>**Dr. Herrick Uses A Scientifically Invalid Exposure Model.**</u>

Plaintiff does not address the arguments in the Motion that were also present in the Joint Motion to Exclude Dr. Herrick (Doc. 201) "[f]or sake of brevity." (Doc. 214 at 1.) Thus, Savogran incorporates by reference all arguments made in reply and in support of the Joint Motion to

14

Case 3:18-cv-00197-RJC-DSC   Document 234   Filed 04/28/20   Page 14 of 16

Exclude to be filed in this case. Savogran also asserts that any reliance by Plaintiff on Dr. Herrick's new Declaration attempting to assert new opinions to bolster his reliance on the Advanced REACH Tool for his retrospective exposure analysis should be disregarded for the same reasons set forth in this reply and for any reasons raised in support of the Joint Motion to Exclude to be field in this case.

## CONCLUSION

For the foregoing reasons, the reasons in the Motion, and those reasons stated by other defendants in their Joint Motion to Exclude and any replies to be filed, Savogran hereby submits that Dr. Herrick's opinions should be excluded from evidence pursuant to Federal Rule of Evidence 702 and *Daubert*.

Respectfully submitted, this 28th day of April, 2020.

By: */s/ Brian M. Ledger*
Brian M. Ledger, Esq.
CA State Bar No.: 156942
GORDON REES SCULLY MANSUKHANI LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124
Email: bledger@grsm.com

By: */s/ Robin K. Vinson*
Robin K. Vinson, Esq.
N. C. State Bar No.: 9018
GORDON REES SCULLY MANSUKHANI LLP
421 Fayetteville Street, Suite 330
Raleigh, NC 27601
Telephone: (919) 500-0856
Facsimile: (919) 741-5840
Email: rvinson@grsm.com

*Attorneys for Defendant The Savogran Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, April 28, 2020, I filed the foregoing **THE SAVOGRAN COMPANY'S REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY, OPINIONS AND REPORT OF PLAINTIFFS' EXPERT DR. ROBERT HERRICK** with the Court using the CM/ECF system, which will serve all counsel of record.

By: */s/ Brian M. Ledger*
Brian M. Ledger, Esq.
CA State Bar No.: 156942
GORDON REES SCULLY MANSUKHANI LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124
bledger@grsm.com

By: /s/ Robin K. Vinson
Robin K. Vinson, Esq.
N. C. State Bar No.: 9018
GORDON REES SCULLY MANSUKHANI LLP
421 Fayetteville Street, Suite 330
Raleigh, NC 27601
Telephone: (919) 500-0856
Facsimile: (919) 741-5840
Email: rvinson@grsm.com

*Attorneys for Defendant The Savogran Company*