IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| BRUCE RHYNE and JANICE RHYNE, | Case No.: 3:18-cv-00197-RJC-DSC |
| Plaintiffs, | |
| v. | |
| UNITED STATES STEEL CORPORATION, et al., | |
| Defendants. | |

**DEFENDANT UNITED STATES STEEL CORPORATION'S REPLY
IN SUPPORT OF ITS MOTION TO EXCLUDE THE
TESTIMONY, OPINIONS, AND REPORT OF DR. ROBERT HERRICK**

United States Steel Corporation ("U.S. Steel") files this reply in further support of its motion to exclude the testimony, opinions, and report of Dr. Robert Herrick ("Motion") (Doc. No. 197).[1]

**I.    INTRODUCTION**

The vast majority of Plaintiffs' Opposition to the Motion ("Opposition")[2] addresses arguments that are pertinent to Safety-Kleen only.  (Doc. No. 239 at  7–11 (reliability of ART

---

[1] U.S. Steel filed the underlying motion jointly with co-defendant Safety Kleen Systems, Inc. ("Safety-Kleen"), but it files this reply on behalf of U.S. Steel only.  This reply brief is timely. (Doc. No. 159 at 2 ¶ D ("Replies to responses, if any, must be filed within seven (7) days of the date on which the response is filed.); Doc. No. 180 at 16 (same); L.R. 7.1(e) (same)).

[2] "Opposition" refers to Doc. No. 239.  On the filing deadline for briefs in opposition to *Daubert* motions (April 21), Plaintiffs filed a 37-page brief opposing the Motion (Doc. No. 212) and a motion to exceed the page limit (Doc. No. 213).  The following day (April 22), Judge Cayer denied the motion to exceed via Text Order.  Plaintiffs moved for leave to file a new brief within the page limits (Doc. No. 220) and attached a proposed 24-page substitute brief (Doc. No. 220-1).  Judge Cayer granted the motion for leave, instructing Plaintiffs to file their substitute brief.  Instead of filing the 24-page brief that Judge Cayer approved, Plaintiffs filed a 42-page brief the following day (April 23).  (Doc. No. 226).  Five days later on April 28, Plaintiffs filed a second motion seeking permission to file a substitute brief.  (Doc. No. 231). The next day (April 29), Judge Cayer granted the motion for leave via Text Order, and

model); *id.* at 14–19 (benzene content of Safety-Kleen product); *id.* at 19–21 (failure to properly apply ART model); *id.* at 21–23 (failure to validate ART model results)). As to these arguments, U.S. Steel takes no position and does not respond. Plaintiffs dedicate additional page space to addressing arguments that neither U.S. Steel nor Safety-Kleen are making. (*Id.* at 1–2 (arguing Dr. Herrick's qualifications); *id.* at 3 n.3 (contending near field/far field model is valid)). U.S. Steel likewise need not respond to these contentions.

As to U.S. Steel's actual arguments, Plaintiffs fail to respond to one (failure to review and consider relevant information); prove U.S. Steel's point in attempting to respond to another (assumption that Mr. Rhyne used raffinated Liquid Wrench until January 1979); and deflect and miss the point regarding the third (arbitrary decisions to include and exclude exposure data). Because Dr. Herrick's opinions are unreliable, his opinions, testimony, and report should be excluded from the trial in this case.

## II. ARGUMENT

### A. Plaintiffs Did Not Respond to U.S. Steel's Argument that Dr. Herrick's Failure to Review and Consider Relevant Information Renders his Opinions Unreliable.

Dr. Herrick admitted that information related to (a) hazard communications at Mr. Rhyne's employment, (b) training that Mr. Rhyne did or did not receive, and (c) Mr. Rhyne's use of a respirator or personal protective equipment "could have been useful" to developing his opinions in this case but that he did not even ask for that information much less review it. (Doc. No. 201-3 at 187:20–188:4). Plaintiffs did not even respond to U.S. Steel's argument that Dr. Herrick's failure to consider this relevant information renders his opinions unreliable.

---

Plaintiffs subsequently filed their substitute brief at Doc. No. 239 – *eight days after the actual deadline to do so*.

### B. Plaintiffs' Unsuccessful Attempt to Identify Support for Dr. Herrick's Assumptions Reveals the Lack of Evidentiary Support.

As to Dr. Herrick's assumption that Mr. Rhyne used the raffinate-formula Liquid Wrench through and including January 1979 (despite knowing that raffinate was no longer in Liquid Wrench after April 1978),[3] Plaintiffs first contend that support for the assumption comes from unspecified evidence allegedly presented to the Court at summary judgment, with the Court purportedly rejecting U.S. Steel's "contentions of no exposure." (Doc. No. 239 at 23). U.S. Steel presented no such evidence at summary judgment, and the Court made no such rulings vis-à-vis U.S. Steel pertinent to Dr. Herrick's assumptions.

Plaintiffs also look to Mr. Rhyne's deposition testimony in an attempt to support Dr. Herrick's speculative assumptions. But Mr. Rhyne testified only about the differences in Liquid Wrench he used in the seventies generally versus the eighties generally. (*Id.* at 23). Mr. Rhyne did not specifically testify – as Plaintiffs mischaracterize his testimony – that "the Liquid Wrench [Mr. Rhyne] used at Duke smelled sweet through 1979." (*Id.*). In any event, Dr. Herrick did not rely on Mr. Rhyne's testimony to reach his assumption. Instead, Dr. Herrick testified that he based his assumption on his general understanding of how supply chains work and how companies manage inventory, areas unquestionably outside the scope of his expertise. (Doc. No. 201-3 at 167:3–6 ("there was a certain amount of it that was already out there in the supply chain, and it wound up being used, and – and so my cut off then was January '79")). This explanation contains the same indicia of reliability as Plaintiffs' pickle jar analogy. (Doc. No. 239 at 24 n.40).

In their last post hoc attempt to find evidence to support Dr. Herrick's assumption, Plaintiffs direct the Court to testimony from a former employee of Radiator Specialty Company

---

[3] As noted, this assumption is significant because it affects Dr. Herrick's Liquid Wrench exposure estimate in this case by 23%. (Doc. No. 201 at 24).

who purportedly stated that all containers of Liquid Wrench that were eight ounces or larger contained the raffinated formula of Liquid Wrench from 1972–1979. (*Id.* at 24). In that same testimony, however, the employee undercut his prior statement by acknowledging the existence of non-raffinated, or deodorized formulas of Liquid Wrench during the same time period. (Doc. No. 226-12 at 131:14–21).[4]

There is no support for Dr. Herrick's assumption that Mr. Rhyne *must have* used *only* raffinate-formula Liquid Wrench through January 1979, solely because U.S. Steel last sold raffinate to Radiator in April 1978. This speculative assumption epitomizes the type of inadmissible expert opinions "connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 137 (1997).

### C. Dr. Herrick Arbitrarily Decided Which Data Inputs to Include and Exclude in Conducting his Exposure Assessment, Rendering it Wholly Unreliable.

To calculate exposure, Dr. Herrick *accounted for* exposure to CRC 3-36 (despite admitting he had no way of knowing whether Mr. Rhyne ever used it) and *did not account for* exposure to Spotcheck and Tap Magic (despite Mr. Rhyne admitting that he used those products). (Doc. No. 201 at 11–16). Plaintiffs' efforts to explain away Dr. Herrick's arbitrary and unreliable methodology – calling it cross-examination material, and suggesting Defendants merely disagree with Dr. Herrick's professional judgment (Doc. No. 239 at 11–14) – fall short and are a complete

---

[4] Because Plaintiffs did not attach any exhibits to Doc. No. 239, U.S. Steel assumes that the exhibits attached to Doc. No. 226 – Plaintiffs' second of three attempts at opposing the underlying Motion – are the applicable exhibits, but it is far from clear.

4
Case 3:18-cv-00197-RJC-DSC   Document 245   Filed 05/06/20   Page 4 of 7

deflection.[5] The point is that Dr. Herrick cherry-picked exposure data without any rational basis or plausible explanation. That is inadmissible advocacy, not science.

Plaintiffs lastly argue that Dr. Herrick's haphazard decisions do not affect his exposure assessment with regard to Liquid Wrench. (Doc. No. 239 at 13). That argument again misses the point because Dr. Herrick's inclusion of CRC 3-36 exposures and exclusion of Spotcheck and Tap Magic exposures unquestionably affected his *cumulative* exposure assessment. By how much? This Court – just like the jury if Dr. Herrick is permitted to testify – is left to guess. The vague contentions by Plaintiffs' *counsel* – that alleged exposures to CRC 3-36 were relatively "small" and that Mr. Rhyne used only "very little" Spotcheck (*id.*) – are insufficient to cure the errors and omissions of Plaintiffs' *expert*. Stated differently, Plaintiffs, via attorney argument only, cannot close gaps and fix problems in an otherwise unreliable expert report and opinion. *See generally Invitrogen Corp. v. Clontech Lab., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony."); *see also Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1367 (Fed. Cir. 2014) ("Without expert testimony, however, [Plaintiffs'] position is mere attorney argument.").[6]

---

[5] Plaintiffs ironically justify excluding exposures from Tap Magic because "[t]here are several types of Tap Magic Cutting Fluid, some without benzene." (Doc. No. 239 at 12). Of course, the exact same argument applies to Liquid Wrench. Plaintiffs, nevertheless, do not allow that double standard to get in their way.

[6] Ironically, the declaration Plaintiffs attached to their Opposition (Doc. No. 226-1) is improper for the exact opposite reason, namely because it is a "poorly disguised attempt[ ] to counter Defendant's arguments with new expert analysis." *EEOC v. Freeman*, 778 F.3d 463, 467 n.7 (4th Cir. 2015) (internal quotation marks omitted). The declaration should be stricken for the reasons outlined by Safety-Kleen and The Savogran Company.

5
Case 3:18-cv-00197-RJC-DSC   Document 245   Filed 05/06/20   Page 5 of 7

## III. CONCLUSION

For these reasons and those set forth in the underlying motion and memorandum of law (Doc. Nos. 197, 201), U.S. Steel requests that this Court grant its motion and enter an order excluding the opinions and testimony of Plaintiffs' expert Dr. Robert Herrick.

Respectfully submitted this 6th day of May, 2020.

By: */s/ Jonathan E. Schulz*
Jonathan E. Schulz (N.C. Bar No. 47285)
jschulz@bradley.com
Christopher C. Lam (N.C. Bar No. 28627)
clam@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
214 North Tyron Street, Suite 3700
Charlotte, NC 28202
Telephone: (704) 338-6059
Facsimile: (704) 338-6099

Matthew Cairone
(Admitted *pro hac vice)*
THE CAIRONE LAW FIRM, PLLC
PMB 58
1900 Main Street, Suite 107
Canonsburg, PA 15317-5861
mcc@caironelawfirm.com

Timothy Gray
(Admitted *pro hac vice*)
FORMAN WATKINS KRUTZ, LLP
201 St. Charles Avenue, Suite 2100
New Orleans, LA 70170
Tim.Gray@formanwatkins.com
*Attorneys for Defendant United States Steel Corporation*

# CERTIFICATE OF SERVICE

I hereby certify that on this day, May 6, 2020, I filed the foregoing **DEFENDANT UNITED STATES STEEL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY, OPINIONS AND REPORT OF DR. ROBERT HERRICK** with the Court using the CM/ECF system, which will serve all counsel of record.

      /s/ Jonathan E. Schulz
      Jonathan E. Schulz

*Attorney for United States Steel Corporation*